Argued and submitted May 4, the decision of the Court of Appeals affirming sentences reversed, the judgment of the circuit court reversed and case remanded to the circuit court for resentencing August 29, 1989

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# BARBARA RAY KIZER,
*Petitioner on Review.*

(TC 87-0839; CA A47568; SC S35865)

779 P2d 604

Ingrid A. MacFarlane, Public Defender's Office, Salem, argued the cause for petitioner on review. With her on the petition was Gary D. Babcock, Public Defender, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response to the petition for review were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

LINDE, J.

## LINDE, J.

Under the 1971 revision of the Oregon Criminal Code, a person commits forgery if "with intent to injure or defraud, the person:

"(a)   Falsely makes, completes or alters a written instrument; or

"(b)   Utters a written instrument which the person knows to be forged."

ORS 165.007(1). A later statute, ORS 161.062(1), provides:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations. * * *."[1]

The question before us is whether the forging and uttering of a single check in a single transaction at one time and place "violates two or more statutory provisions" and gives rise to separately punishable offenses.

Two counts of a four-count indictment charged, in Count 1, that defendant falsely made and completed a personal check on the account of Barbara Glaze, and, in Count 2, that as part of the same act and transaction defendant uttered the same check, knowing the check to be forged. The third and fourth counts charged an attempted theft of money and a theft of Glaze's purse.

After a jury found defendant guilty of all four charges, the circuit court suspended imposition of sentence and put defendant on probation on Count 4, the theft. The court sentenced defendant to five years' imprisonment on Count 1, imposed a concurrent five-year sentence on Count 2, and merged Count 3 with Count 2, stating that those counts were "pretty much the same thing." On appeal, defendant asserted that the facts charged would support only one conviction and sentence for forgery either by falsely making or by uttering the

---

[1] Subsection (1) continues:

"However, when one of the statutory provisions violated is burglary in any degree, and the other statutory provision violated is theft or criminal mischief in any degree, and the theft or criminal mischief was pleaded as the intended crime of the burglary, the burglary and the theft or criminal mischief shall constitute only one punishable offense."

single check. Although defendant had not preserved the error in the trial court, she urged the Court of Appeals to correct the erroneous sentence pursuant to ORAP 7.19, quoting the court's observation: "This court has the discretion under ORAP 7.19 to review allegedly illegal or unauthorized sentences apparent on the face of the record, even when no objection was made below." *State v. Walker,* 68 Or App 561, 565, 683 P2d 1006 (1984).[2] The state's response to the appeal primarily relied on defendant's failure to preserve the error in the circuit court, although the state also presented a response on the merits of the claim. The Court of Appeals affirmed the sentences without opinion. *State v. Kizer,* 94 Or App 564, 767 P2d 120 (1988).

■ We consider it appropriate to review the sentencing issue in conjunction with the same issue in *State v. Crotsley,* 308 Or 272, 779 P2d 600 (1989), also decided today. Defendant's failure to object to the sentence in the trial court was briefed and understood when this court allowed the petition for review, and nothing new has occurred or been discovered to alter the decision to allow it. If that decision had been based on another issue and an unlawful sentence had been brought to our attention, we likely would correct it without inquiring whether in the particular case two sentences for one crime are "harmless," and having allowed review, we correct it here; the court has not made it a practice to reargue decisions to allow review in its opinions. Unlike many trial errors, a failure to object to an unlawful sentence does not require a retrial and the error often can be determined without reference to evidence. There is no claim that the failure to object misled the court or prejudiced the opposing party, and we are not persuaded that it is likely to have done so. We reverse the decision of the Court of Appeals and remand the case to the circuit court for resentencing.

■ *State v. Crotsley, supra,* explains that the 1985 legislature enacted ORS 161.062 after this court, in *State v. Cloutier,*

---

[2] ORAP 7.19(5) provides:

"Alleged errors will not be considered on appeal unless preserved in the lower court and assigned as error in the appellant's or cross-appellant's opening brief, except that the appellate court may take notice of errors of law apparent on the face of the record. Assignments of error that the court can consider only by searching the record for the proceedings complained of will not be considered."

286 Or 579, 596 P2d 1278 (1979), had drawn attention to incomplete legislative directions on the complex questions of multiple charges, trials, convictions, and sentences for acts that violate more than one criminal prohibition in the course of what, in non-legal terms, would appear as one "crime."[3] Legislative direction, however, was not lacking with respect to forgery. The state's brief candidly states:

> "Although the two counts appear to require proof of two different elements, making and uttering, it appears that the legislature did not intend that these two methods of committing forgery constitute separate offenses. *Commentary to the Oregon Criminal Code of 1971* explained that ORS 165.007, defining methods of committing forgery, did not necessarily create two offenses when one makes and utters a single document. It states:
>
> > " 'The draft would clarify the law on the point in issue by providing that forgery is a single crime that may be committed by falsely making, completing, or altering a written instrument or by uttering a forged instrument with knowledge of its forged character.'
>
> "(*Id.,* p 198). Given that the legislature did not intend that separate crimes would arise from the making and uttering of a single check, arguably the making and uttering are not separate elements."

---

[3] *State v. Cloutier* quoted five distinct issues identified in Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis L Rev 528, 529 (1961):

"(1) For how many offenses should a suspect be prosecuted?

"(2) Of these offenses charged, which should be submitted to the jury for its consideration?

"(3) Where more than one offense is submitted to the jury, for how many offenses may the jury properly convict the defendant?

"(4) Where there is conviction for more than one offense, for how many offenses is it proper to sentence the defendant?

"(5) Under what circumstances may an accused be subjected to separate, successive prosecutions instead of adjudicating his liability in a single proceeding?"

*Cloutier,* like the earlier *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), held that a burglary and the intended larceny after entry only gave rise to a single conviction and sentence, the rule that was maintained in the second sentence of ORS 161.062(1), *supra* note 1.

*Cloutier* also noted that the term "merger" should be "reserved for the narrow situation when the completion of one offense necessarily includes commission of acts sufficient to constitute violation of another statute." 286 Or at 586. Although defendant argues that his forgery convictions should "merge," the correct issue is whether making and uttering the check in this case was a single crime.

The Commentary cited by the state explained that the new forgery statute adopted the rule stated in *Daugharty v. Gladden,* 217 Or 567, 341 P2d 1069 (1959), *cert den* 361 US 867 (1959), that existing Oregon law, OCLA 23-560, "clearly state[d] but a single crime which may be committed by committing forgery or uttering, *or both,* as these crimes were known to the common law." Oregon Criminal Code of 1971, 159 (1970 ed) (emphasis added).

■ Another way to state the proposition is that when ORS 165.007 defined the "single crime" of forgery as making or uttering an instrument, the terms "falsely makes, completes or alters a written instrument or utters a written instrument which the person knows to be forged" constituted a single "provision" for purposes of ORS 161.062, only made easier to read by inserting the letters (a) and (b). They clearly would have been a single provision for purposes of ORS 162.062 without those letters, as explained in the Commentary to the 1971 Criminal Code quoted by the state, and the formal insertion of the lettering did not change the substance. The same structure is used, for example, in ORS 813.010, which defines the offense of driving while under the influence of intoxicants as driving a vehicle when one "(a) [h]as .08 percent or more by weight of alcohol in the blood [or] (b) [i]s under the influence of intoxicating liquor * * *." "Statutory provision" in ORS 161.062 was not defined to mean a section, subsection, or paragraph; consistent with its purpose, the term can be interpreted to mean any provision defining a "single crime," whatever visual form the provision is given.

In the present case, the state argues only that making and uttering the same instrument could be two distinct crimes when there is a significant time separation between the making and the uttering; it concedes that if the court does not find such a separation, the two forgery offenses are "appropriate for merger." This case does not present an occasion to test the state's theory, which seems to relate to the statute's reference to "the same conduct or criminal episode." It appears that on March 2, 1987, defendant took Glaze's billfold, checkbook and address book from Glaze's purse, which also contained credit cards and other identification (the theft charged in Count 4), and that defendant signed Glaze's name on one of Glaze's checks and tried to cash it by sending it from her automobile to a drive-up teller, who, however, declined to cash the check

when defendant would not answer a further identifying question. The state did not charge or show that defendant had falsely made the check at some other place and time; to the contrary, the indictment charged that defendant falsely made the check and uttered it as "part of the same act and transaction." We therefore express no view on the state's theory that a lapse of time between making and uttering the same check would make these acts two distinct crimes.

The decision of the Court of Appeals affirming the sentences is reversed, and the case is remanded to the circuit court for resentencing.

**JONES, J.,** dissenting.

Defendant acknowledges that the issue of incorporation was not raised before the trial court. Although an appellant generally may not raise issues on appeal that were not litigated before the trial court, appellate courts have the power to take notice of unpreserved errors of law "apparent on the face of the record." ORAP 7.19.

In support of its decision to review the claim of error, the majority suggests that the absence of an objection by defense counsel did not mislead the court. To the contrary, defense counsel may have had sound tactical reasons for not objecting to the concurrent sentences and, if he had made a timely objection, the trial court could well have changed the sentences. Usually a concurrent sentence is a boon to a defendant, and may have been to the defendant in this case. An objection by defense counsel could have caused the court to incorporate the "making" and "uttering" charges and to impose consecutive sentences on the other charges. Even though alleged in the indictment "as part of the same transaction," the theft of the purse was clearly a separate criminal act, not incorporated in the subsequent acts of forging and uttering of the stolen check. If so, the objection could have hurt defendant substantially.

We need not speculate on counsel's reasons for not preserving a claim of error. We simply should not entertain a claim of error "apparent on the face of the record" in a case where tactical judgment at trial could have dictated the choice and, as I shall demonstrate, there may have been no "error" at all, much less an "apparent" one.

In this case, the determination on incorporation under ORS 161.062(1) (1985) and ORS 161.067(1) (1986) depends, in part, on factual issues not resolved by the trial court, *i.e.*, whether the acts were part of the same "criminal episode." Error, if any there were, could not, therefore, be apparent on the face of the record.

The forgeries that are the subject of defendant's petition were committed by making and by uttering the same check. The record does not establish that the making and uttering were contemporaneous, but the likelihood is that they were not. The evidence is that defendant stole the victim's checks hours before she attempted to cash one of them, and that she forged the check at some time before she presented it to the bank teller for cashing. The evidence demonstrates that the victim last saw her stolen wallet at approximately 12 p.m. on March 2, 1987, in her office at Lewis & Clark Law Library. She discovered it missing after 5 p.m. that same date. The stolen wallet contained $10, a checkbook, an address book, miscellaneous identification, and personal papers.

At 4:10 p.m. the same day, defendant, accompanied by two other persons, presented the victim's stolen identification and a completed forged $210 check at a drive-through window of the Tigard branch of U.S. National Bank in an attempt to cash the check. The teller became suspicious and questioned defendant about the account; defendant demanded the identification back, then left with her two companions, abandoning the check and identification. The teller did not see defendant forge the check. Presumably it was forged earlier because the signature closely matched that of the victim's, an act that can scarcely be accomplished at a drive-through bank window. The teller provided police with the license number and description of defendant's car. Another officer had towed that car one week earlier, after defendant had been arrested on an unrelated forgery charge. When the car was towed, it contained a map that had several Portland area schools marked on it. Some of the credit cards that defendant allegedly used in the earlier forgery had come from one of the marked schools. Defendant testified that she was not present at the bank and never handled the check or otherwise participated in the crime.

The majority appears to accept carte blanche the allegation in the indictment that the making and uttering of the

check were done "as part of the same act and transaction." That allegation, however, does not control whether the acts were done at separate times. A separation in time can be a factor sufficient to support a conclusion that there was more than one "criminal episode," which then would be outside the scope of ORS 161.062(1) and 161.067(1) and, presumably, subject to multiple convictions and sentences. The majority's conclusion seems to be based on references to a "single crime" in legislative history from a 1971 law to interpret the term "same * * * criminal episode" in these 1985 and 1986 statutes. Those statutes were passed to clarify the 1971 criminal laws. That legislative history is not applicable to the 1985 and 1986 statutes.

The 1985 legislature, in a companion provision of the same bill enacting ORS 161.062(1), also dealt with the issue of consecutive or concurrent sentences for multiple convictions. In that context the legislature used the term "continuous and uninterrupted course of conduct" as an apparent synonym for "same * * * criminal episode." The answer as to which history is more relevant is clear, and the only conclusion I can reach is that there are material unresolved questions of fact pertinent to a determination of "same * * * criminal episode." These unresolved questions not only mean that error is not apparent on the face of the record, but also that the question of error is, at the very least, an open one.

Moreover, the majority opinion miscasts the state's position on legislative intent. The state does not concede that the 1971 commentary to the Oregon Criminal Code is applicable. In fact, the state specifically points out in its response to the petition for review that both the Oregon legislature and the people of the State of Oregon recently enacted laws disfavoring incorporation. *See* ORS 161.062, enacted by the legislature in 1985, and ORS 161.067, enacted in 1986 by initiative.

The 1971 legislative commentary simply is not relevant to current incorporation issues in forgery cases. It tells us little relevant here on what acts constitute the same "criminal episode" under the terms of the 1985 and 1986 statutes; nor does it assist in interpreting or applying the term "two or more statutory provisions" in those statutes.

Although the legislative history of ORS 161.062 does not directly address the problem presented in forgery cases,

the statute itself, clear on its face, and the discussions leading to its enactment reflect that the legislature intended, quite simply, that where a crime is defined by distinct statutory elements contained within separate statutory provisions and those elements do not overlap, a person who violates those separate provisions in the course of the same criminal episode may properly be convicted on each. The intent was to have multiple convictions and sentences on the record and express exceptions (*e.g.*, for burglary and theft) were noted in the statute.

ORS 165.007(1) provides:

"(1)  A person commits the crime of forgery * * * if, with intent to injure or defraud, the person:

"(a)  Falsely makes, completes or alters a written instrument; or

"(b)  Utters a written instrument which the person knows to be forged."

The acts of making or completing the instrument forged are contained in paragraph (a), a separate statutory provision from that in which the act of uttering is contained — paragraph (b). A person may commit forgery by making a check without uttering it, and vice versa. Each of the paragraphs in ORS 165.007 contains an element that the other does not. Accordingly, under ORS 161.062(1) and 161.067(1) the separate statutory violations constitute separately punishable offenses if the acts are part of the same criminal episode. This is not materially different from holding a defendant separately accountable for theft and sale of the stolen merchandise.

The majority equates paragraphs (a) and (b) of the driving under the influence of intoxicants statute, ORS 183.010(1), as analogous to the making and uttering crimes. DUII can be proven by one of two methods: (a) the driver has a .08 percent or more weight of alcohol in the blood, or (b) the driver is under the influence of intoxicating liquor. This separation merely provides alternative methods of proving the same offense, whereas making and uttering require different conduct, that is, separate acts, and are designated as separate crimes by the (a) and (b) designations.

To summarize: There is an unresolved question of

fact that I believe is material to determining whether defendant was engaged in the same criminal episode. If defendant was not so engaged, then the state plainly is entitled to separate convictions and sentences for making and for uttering the forged check. We cannot tell from the record whether the trial court concluded that multiple convictions and sentences were permitted because defendant's acts were not part of the same criminal episode or whether the trial court felt compelled by (or thought it had discretion under) ORS 161.062(1) or 161.067(1) to enter separate convictions and sentences. I cannot conclude, as the majority has, that the facts of this case, as a matter of law, amount to the same criminal episode, or that ORS 165.007(1)(a) and (b) are not separate "provisions" within the meaning of that term in ORS 161.062(1) and 161.067(1). Paragraphs (a) and (b) of ORS 165.007(1) clearly define separate crimes and, consistent with the 1985 legislative intent, should be separately punishable. *See State v. Crotsley,* 308 Or 272, 779 P2d 600 (1989). The prosecution's allegation that the acts arose out of the same act and transaction does not resolve this issue. That allegation merely allowed the prosecution to try these charges in one trial rather than separately.

Finally, if there was error, it was harmless error. Defendant testified on direct examination that she previously had been convicted of the following nine felonies: Robbery II (1973), Forgery I (1975 and 1987), conspiracy to commit bank robbery (1977), Theft I (1980, 1982 and 1987), and failure to appear (1982 and 1987). Within the corrections context, an additional conviction and sentence here will not result in any change to defendant's history risk score that might lead to a later parole release date under OAR chapter 255.[1] Defendant's

---

[1] OAR chapter 255 establishes the method by which an inmate's history/risk score is calculated. It provides, in relevant part:

"Coding Instructions: History/Risk Score

"* * * * *

| | |
|---|---|
| "(A) No prior felony convictions as an adult or juvenile: | 3 |
| "One prior felony conviction: | 2 |
| "Two or three prior felony conviction: | 1 |
| "Four or more prior felony conviction: | 0 |

"In general, the purpose of this item is to consider previous verified instances of criminal conduct.

"1. *Adult Convictions.* Count as prior conviction all adult convictions for

record of 10 or 11 felonies will put her far past the level at which her prior record (or lack thereof) would contribute any points toward reduction of her matrix computation.

In fact, convictions which are "merged" (the term used in the rules), may be considered aggravating factors in the matrix computation. Under Corrections Department rules, the trial court's failure to incorporate the two forgery offenses actually may have inured to defendant's benefit. Error, if any, in the trial court's failure to incorporate defendant's forgery convictions and sentences was, in defendant's case, harmless.

I dissent because:

(1)   There was no error;

(2)   If there was error, the claim of error was not preserved;

(3)   If there was error, it is not apparent on the face of the record; and

(4)   If there was error, it was harmless.

**GILLETTE, J.,** dissenting.

I join in the dissenting opinion of Jones, J. But what is most significant about this case, I think, is what it does to the normal requirement that a party claiming error raise it at the earliest possible time or be deemed to have waived it. I therefore add these few remarks to focus on that portion of the majority opinion that attempts to justify our consideration of this case in spite of an obvious procedural difficulty.

The "error" that the majority today discovers and

---

criminal acts classed as felonies. Count convictions in a foreign country for criminal behavior that would be classed as a felony in Oregon.

"* * * * *

"11. *Old Prior Record.* Do not count prior felony convictions or commitments under item A or B, if the offender has maintained a conviction free record of ten years in the community immediately prior to the current offense behavior (including time on probation or parole). * * *

"* * * * *

"13. *Merged Convictions.* Judicially merged convictions at the time of sentence will be counted as one conviction. However, the offense that was merged may be considered as aggravation."

corrects was not raised at trial. The majority says the following about the failure to raise this issue in the trial court:

> "We consider it appropriate to review the sentencing issue in conjunction with the same issue in *State v. Crotsley,* 308 Or 272, 779 P2d 600 (1989), also decided today. * * * Unlike many trial errors, a failure to object to an unlawful sentence does not require a retrial and the error often can be determined without reference to evidence. There is no claim that the failure to object misled the court or prejudiced the opposing party, and we are not persuaded that it is likely to have done so."

(308 Or at 241.) Each of these sentences deserves closer scrutiny.

> 1. "We consider it appropriate to review the sentencing issue in conjunction with the same issue in *State v. Crotsley,* * * * also decided today."

That this case is announced together with *State v. Crotsley, supra,* is a fortuity. Review in this case was not allowed for the purpose of creating a decisional companion to *Crotsley.* In fact, this court allowed review in *Crotsley,* a case in which the error argued to us had also been argued below, *after* review had been allowed in this case, and to address an entirely different issue — the meaning of ORS 161.062 and 161.067.[1] The reference to *Crotsley* disguises the majority's actual purpose in this case, *viz.,* correction of an "error" the majority apparently considers too serious to let pass.

We have the power to correct error (if any there be) in such circumstances; I would be the last to deny it. Neither would I deny that the exercise of that power is, ultimately, a question committed to the conscience of each of us. But the fact that the power belongs to each one of us does not relieve us from the obligation to exercise it in a principled way. If the majority would honestly own up to the fact that what is involved here, from its point of view, is a disagreement as to when that power should be exercised, the casual reader of the case at least could see where the majority got off track.

> 2. "Unlike many trial errors, a failure to object to an

---

[1] Of course, the meaning of ORS 161.062 and 161.067 *ought* to be what this case is about, too. Unaccountably, however, the majority has chosen to read those two statutes out of existence, at least for the purposes of the forgery statute.

unlawful sentence does not require a retrial and the error often can be determined without reference to evidence."

The first difficulty with this sentence is that it is unlikely that any error was committed here. The majority opinion answers the pivotal argument of the dissent by Jones, J., simply by declaring that, although ORS 165.007(1) lists two different ways of committing forgery in separate paragraphs separately lettered, the 1971 legislature that enacted the statute did not intend that those two subsections of the statute constitute different offenses. (308 Or at 243) But whatever the legislature may have intended by the enactment of the forgery statute in 1971, a later legislature *and the people, by initiative,* have demonstrated that they intend something else now. When the people announce for themselves a policy different from that which the legislature created fifteen years earlier, it seems to me our function is to see if the newer doctrine can be applied, not to throw roadblocks in its way. At the very least, the forgery statute *could* be read to state two different crimes. And, if it could, our job is to follow the policy set by the people themselves and say that it *does* state two different crimes, whatever some of us may think of the wisdom of such a policy.[2]

The underlying merits aside, however, this sentence also is surprisingly naive about the process when it says that "error often can be determined without reference to evidence." That is true, I submit, only for those who do not wish to face up to the fact that sophisticated defense counsel may intentionally ignore a trial court error on the theory that it is better to let sleeping dogs lie.

---

[2] On its merits, the impact of this opinion can best be summed up by the following colloquy:

"FIRST LAWYER: I hear the court decided the *Kizer* case. How did it come out?

"SECOND LAWYER: The defendant gets a new sentencing hearing.

"FIRST LAWYER: Why's that?

"SECOND LAWYER: Because, the court says, the legislature didn't intend forging a check and then passing it to be two different crimes resulting in two different sentences.

"FIRST LAWYER: That's interesting. How did the court explain the effect of the 1985 statute [ORS 161.062(1)] or the 1986 initiative measure [ORS 161.067(1)]?

"SECOND LAWYER: The court said those statutes were overruled by the 1971 legislature."

This defendant was charged with and convicted of four offenses. The trial judge, prior to sentencing, "merged" two of the charges — one count of forgery, and the count of attempted theft — for sentencing purposes. He then sentenced defendant on a total of three charges. Even supposing that the trial judge erred in following this procedure, defense counsel might keep silent about it because he felt that there was a possibility the judge would impose a sentence less advantageous to the defendant if the court correctly understood the extent of its authority. (He might have been concerned in this case, for instance, that the court, upon learning that it could not sentence on both forgeries, would decide that the attempted theft conviction did not merge and that a *consecutive* sentence on that charge was in order.) Counsel in such a situation is *certain* to stay quiet from now on, because the court today gives defendants a free shot at review on this issue, whether or not they make any pretense of objecting. This is a game we should not encourage.

It also is worth noting that the criteria relied on here are (1) the fact that the "error" does not require retrial, and (2) the idea that the "error" can be determined without reference to evidence. Does this mean that the majority would decide the case differently if (1) consideration of the "error" *would* require a retrial, or (2) consideration of the "error" *would* require reference to the evidence? One wonders how much adherence there will be to these factors in a later case.

3. "There is no claim that the failure to object misled the court or prejudiced the opposing party, and we are not persuaded that it is likely to have done so."

Any reader of this sentence must be taken aback by the majority's reference to the fact that there is "no claim" by the state of prejudice to it or to the sentencing judge. In view of its willingness to let the defendant have his sentence reviewed by this court when he made "no claim" of prejudice when it would have made a difference, one might wonder if the majority is unconsciously following a double standard here. If we are going to entertain defendant's claims without requiring an objection, the least fairness calls for is a vigorous inquiry *on our own* into any possible prejudice, rather than standing on the ceremony of saying that the state didn't claim any. I perceive no real inquiry, much less a vigorous one, in the majority opinion.

For the foregoing reasons, as well as for the reasons expressed in the separate dissent of Jones, J., I dissent.