Argued and submitted September 29, 2000, reversed and remanded for entry of single conviction of burglary and for resentencing; otherwise affirmed February 7, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# LEOPOLDO CELOS LUCIO-CAMARGO,
*Appellant.*

(9802-31380; CA A104767)

18 P3d 467

Peter Gartlan, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Edmonds, Presiding Judge,. and Armstrong, Judge, and Ceniceros, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from two convictions for burglary in the first degree. ORS 164.225. He contends on appeal that, on the facts of this case, he can be convicted of only one burglary. We reverse.

We state the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Late one afternoon, defendant went to an apartment where his girlfriend, Hernandez, her three minor children, her mother, Villa-Lopez, and another couple lived. Hernandez had petitioned for and had obtained a restraining order prohibiting defendant from contacting her or from coming to her residence. Defendant had allegedly threatened to kill Hernandez and himself in the weeks immediately preceding the visit, and he had been physically abusive in the past. Hernandez had talked with defendant on the telephone and had allowed him to come to her residence at times despite the restraining order. On the day in question, defendant knocked on the apartment door, and when Hernandez answered, he said either, "I'm going to do you a favor," or "I need you to do me a favor." He then reached under his coat, and removed an air chisel that resembled a pistol.[1] He pointed it in the direction of Hernandez. She immediately slammed the door closed, leaving defendant standing outside, and ran out of her apartment through another door, followed by her oldest child and Villa-Lopez.

From another apartment, Hernandez and Villa-Lopez could see that defendant had entered their apartment and was standing at a window, looking out. Villa-Lopez then returned to the apartment because two children remained inside. She confronted defendant, who was then sitting on a chair in the apartment, and asked him why he had frightened Hernandez and what he was doing in the apartment. Defendant picked up the tool from the floor and told Villa-Lopez to "shut up." Villa-Lopez testified that defendant told

---

[1] Defendant testified that he intended to pawn the tool to Hernandez for cash, as he had done with other tools in the past, and that his statement about "a favor" was an attempt to give the tool to Hernandez and obtain money in return.

her that she was the one he was going to kill. Defendant then left the apartment.

Subsequently, defendant was charged with two counts of burglary and two counts of menacing. The two burglary counts alleged that he had entered the apartment unlawfully, intending to assault Hernandez, and that he had remained there unlawfully, intending to menace Villa-Lopez.

On appeal, defendant argues that

"the number of burglaries for which he could properly be convicted depends upon the number of buildings entered, not the number of occupants in the building or the number of crimes committed by the burglar while within the building."

He relies on our holdings in *State v. Barnum*, 157 Or App 68, 970 P2d 1214 (1998), *rev allowed* 328 Or 594 (1999), and *State v. Sparks*, 150 Or App 293, 946 P2d 314 (1997), *rev den* 326 Or 390 (1998). The state responds first that defendant did not raise the argument to the trial court that he makes on appeal and, second, that defendant was properly convicted twice for burglary.

■ We first address the issue of preservation under ORAP 5.45. Defense counsel told the trial court, "I suggest that these two counts [the burglary counts] merge for purposes of sentencing." That statement suggests that defendant was arguing that the court impose one sentence on both counts of burglary, as distinguished from requesting that only a single conviction for burglary be entered. As the Supreme Court cautioned in *State v. Kessler*, 297 Or 460, 462-63, 686 P2d 345 (1984),

"[t]he issue of multiple sentences differs from the issue of multiple statutory violations and * * * the issues are difficult to keep separate when the single word 'merger' is used to describe both. 'Merger,' of course, is not a statutory word but only a term of convenience, and it loses its convenience when it obscures more than it describes. One offense may be said to be 'merged' in another in the sense in which a completed crime includes and 'merges' with the attempt to commit it, or a murder includes and 'merges' [with] the attempt to commit it, or a murder includes and merges [with] the assault that proved fatal or the felony that made

an unintended homicide a murder. But when 'merger' is carried into the context of sentencing, it misdirects attention to the point that defendant committed multiple offenses when that point is not at issue in the sentencing stage. * * * But the question of cumulative sentences cannot be decided by asking whether different crimes were committed. It is only when a defendant has validly been convicted of separate offenses, when there is no 'merger,' that a question can arise whether the relevant laws contemplate a single sentence or cumulative sentences for such multiple offenses."[2] (Citations omitted.)

However, the remainder of counsel's statements to the court clarified that he was in fact requesting that the convictions merge.[3] He argued:

"If you look at it statutorily, all it requires is that unlawful entry or remaining into a building or a dwelling, in this case, with the intent to commit the crime. And by pleading the separate crimes of assault and harassment or menacing—a quick look here. That's two counts, menacing being the second one in Count 2. That just alters the theory. But it's the same crime. It's the same building that is entered into."

The prosecutor argued in response that the two burglaries had different elements, because defendant had entered the premises unlawfully with the intent to assault Hernandez and had remained there unlawfully with the intent to menace Villa-Lopez. The court eventually asked defense counsel whether, if concurrent sentences were imposed for the burglaries, it would still matter whether the convictions merged. Defense counsel argued that it did matter, because his client would have a conviction for "a two-person felony, with one [person] for each burglary." The court then said,

---

[2] As pointed out in *State v. Sumerlin*, 139 Or App 579, 583-85, 913 P2d 340 (1996), cases decided before the enactment of ORS 161.062 and ORS 161.067 in 1985 do not reflect the current scheme for determining whether convictions or sentences merge.

[3] The phrase "merger of convictions" is often used to describe the situation in which a crime is committed as one of the steps toward commission of another crime. We use the phrase here as a "short-hand" reference to those situations encompassed by ORS 161.067.

"I'm inclined to agree with the state. I frankly don't know the answer. It is not going to make a difference to your client within the time that we will get a decision from the Court of Appeals. * * * They can reverse and remand for a technical resentencing if they have to, which will be done within 18 months if he's going to prison. So, let's assume that I'm going to reject your argument."

Defense counsel then said that he agreed with the state's recommendation that the sentences imposed on the burglary counts should be concurrent. Despite defense counsel's initial inartful statement, we are persuaded that the state and the trial court recognized that defendant was requesting that the convictions merge. We conclude that defendant has preserved the issue that he raises on appeal.

■     We turn to the issue of whether defendant could properly be convicted of two counts of burglary on these facts. The issue implicates several statutes: ORS 164.215, which defines burglary generally; ORS 164.205, which provides definitions of the terms of the burglary statute; ORS 164.225, which defines first-degree burglary; and ORS 161.067, which delineates the number of separate offenses for which a defendant can be convicted or punished.[4]

ORS 164.215 provides:

"Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person *enters or remains* unlawfully in a building with intent to commit a crime therein." (Emphasis added.)

ORS 164.225(1) provides, in relevant part:

---

[1] Defendant did not provide any specific statutory authority to the trial court during his argument. Arguably, his contention could have been that *former* ORS 161.062 would not allow separate punishment for his conduct. ORS 161.062 was enacted in 1985, Or Laws 1985, ch 722, § 4, and repealed in 1999. Or Laws 1999, ch 136, § 1. The provisions of ORS 161.062 were duplicated in major part by ORS 161.067, enacted in 1987. Or Laws 1987, ch 2, § 13. During 1987 through 1999, both statutes governed the imposition of separate punishment for certain offenses. It does not matter for purposes of our analysis whether defendant was arguing under *former* ORS 161.062 or ORS 161.067, because the relevant portions of those statutes are identical. Because ORS 161.062 has since been repealed, and defendant did not expressly identify it as authority on which he relies, we rely only on ORS 161.067 in this opinion.

"A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:

"* * * * *

"(c)   Uses or threatens to use a dangerous weapon."

The term "enter or remain unlawfully" is defined in ORS 164.205(3), which states, in part:

" '[to] enter or remain unlawfully' means:

"(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so; [or]

"(b)   To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge[.]"

Finally, ORS 161.067 provides, in part:

"(1)   When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

"(2)   When the same conduct or criminal episode, though violating only one statutory provision, involves two or more victims, there are as many separately punishable offenses as there are victims. However, two or more persons owning joint interests in real or personal property shall be considered a single victim for purposes of determining the number of separately punishable offenses if the property is the subject of one of the following crimes:

"* * * * *

"(d)   Burglary as defined in ORS 164.215 or 164.225.

"(3)   When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other

such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

Defendant's argument implicates ORS 161.067, which controls the number of convictions allowable. Each subsection of ORS 161.067 requires an assessment of how many statutory provisions were violated. The threshold question under the statute, therefore, is whether, by entering unlawfully and then remaining unlawfully, defendant violated more than one statutory provision.

The Supreme Court said in *State v. Barrett*, 331 Or 27, 33, 10 P3d 901 (2000), that the phrase, " 'statutory provision' in *former* ORS 161.062(1) 'was not defined to mean a section, subsection, or paragraph; [but] consistent with its purpose, the term can be interpreted to mean any provision defining a 'single crime[.]' " *Id*. at 33, *quoting State v. Kizer*, 308 Or 238, 243, 779 P2d 604 (1989). The relevant inquiry, according to the court, is whether the provisions in question "address separate and distinct legislative concerns." *Id*. at 33, *quoting State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989). The *Barrett* analysis is applicable here because the relevant wording of *former* ORS 161.062(1) is identical to ORS 161.067(1).

In *Barrett*, the court said that it would ascertain whether the murder statute, ORS 163.095, addressed "separate and distinct legislative concerns" by first examining its text and context and its prior interpretations of the statute. *Barrett*, 331 Or at 32. We do the same with the burglary statute, ORS 164.215. As to the text of the statute, ORS 161.067 itself does not define what is a "statutory provision." We note that the fact that defendant's conduct violated only one statutory section is "some indication that the legislature intended to define a single crime." *Id*. at 35. Also, the statute specifically says, "a person commits *the crime* of burglary * * * if the person enters *or* remains unlawfully in a building with an intent to commit a crime therein." (Emphasis added.) From the use of the singular word "crime" in the first phrase of the statute, it is inferable that the legislature intended that only one crime is committed whether one enters unlawfully or remains unlawfully. Finally, we note that by joining

the words "entering" and "remaining" with the word "or," the legislature may have been indicating that the acts of entering and remaining were simply alternative ways of committing the same crime. On the other hand, the language in ORS 164.205(3)(a) could indicate a discrete legislative concern about remaining on premises when not licensed to do so, a concern that the legislature intended to address by making that conduct a separately punishable crime.

The legislative history of ORS 164.205, ORS 164.215, and ORS 164.225 shows that, by adopting the unlawfully "enters or remains" language, the legislature intended to address the effects of a trespass to real property. ORS 164.215 and ORS 164.225 were adopted in substantially their present form as part of the 1971 revisions to the Oregon Criminal Code. Or Laws 1971, ch 742, §§ 135-36. The term "enters or remains unlawfully" was taken from New York Revised Penal Law § 140.00. It replaced language in the former statute that required a "breaking and entering." ORS 164.215 (1969). Donald Paillette, the project director of the Criminal Law Revision Commission, which was responsible for drafting the new statute, explained the change in language to the House Criminal Law and Procedure Committee. Tape recording, House Committee on Criminal Law and Procedure, SB 40, March 2, 1971, Tape 4, Side 1 (statement of Donald Paillette).

Paillette testified that the "remain unlawfully" language was added to the statute to give owners and administrators of public buildings a way to remove people who entered lawfully but remained unlawfully. He said that the changes were intended to address "sit-in kind of situations, particularly [in] university buildings, public buildings, courthouses, [and] office buildings," and acknowledged that situations had occurred on Oregon campuses where students had taken over campus facilities and refuse to leave. *Id*. He explained that the drafter's "idea was to try to tighten up the definitions that apply throughout here, not to get at the burglaries, but to get at the trespass." *Id*. He continued:

> "We are attempting to balance the rights of individuals to be in public places to make lawful use of premises, particularly public buildings, and at the same time to give the people who are in charge of these places some authority to deal with these situations that do occur.

"We're trying to first of all distinguish between a lawful usage of a public building, and an unlawful one. And to recognize that people for example can come into the capital building and use it for some lawful purposes - for example, some usages of the rotunda might be lawful because of the nature of it. But 50 people coming into the rotunda would be far different than 50 people coming into this meeting room in the course of a meeting and sitting down on the floor or lying down in the middle of the table, and to avoid these kinds of situations, and to put the people on notice, rather, than making a mass arrest, or attempt to make a mass arrest to put them on notice by responsible persons that their usage of the premises has ceased to be lawful and that they are asked to desist and to leave, or to desist from the kinds of activities that they are engaging in. We were intending, or the commission was intending, when we first drafted this, to deal with these kinds of situations. * * * Generally, this is the kind of situation those amendments are intended to get at." *Id.*

Paillette went on to explain how the new language would work in the context of the burglary statutes. He said:

"It's important for you to note how this basic definition of burglary differs from existing law. We think we've made some desirable changes here. The basic definition requires no breaking, and it is consistent with existing law found in ORS 164.220. It eliminates the necessity of proving an intent to steal or commit a felony in a non-dwelling burglary as presently required under the statute. We make the intent element the same as it would be under the dwelling kind of burglary and that is the intent to commit any kind of crime. Also, the definition of burglary does away with the need of proving that the property was kept in the building at the time. In other words, you could have a lawful entry, but it could become burglary because it became an unlawful remaining that coincided with the intent to commit some crime in that building." *Id.*

We conclude that the above discussion demonstrates that the legislature in promulgating ORS 164.225 focused on the elements of trespass and the invasion of the possessory interests of property owners and their interests in not having crimes committed on or in their property. The fact that defendant committed two acts—the act of entering and the act of intentionally remaining—does not by itself convert his conduct into violations of two separate statutory provisions. *See*

*State v. Kizer*, 308 Or 238, 779 P2d 604 (1989) (holding that although the defendant committed two acts—the making and the uttering of a forged instrument—either of which would have been punishable alone, the legislature intended that there be only a single crime under the applicable forgery statute). Moreover, the fact that defendant committed the entry with the intent to assault Hernandez and remained with the intent to menace Villa-Lopez does not make his conduct a violation of two statutory provisions. We held in *Barnum*, 157 Or App at 178, that where the defendant entered the premises with the intent to commit two separate crimes inside, his burglary convictions should have merged. We said that it is the invasion of the possessory interest with a criminal intent that is punished by the burglary statute and that only one invasion occurred, even though the defendant intended to commit two crimes once he invaded the premises.[5] In other words, a trespass with intent to commit multiple crimes does not amount to the violation of two or more statutory provisions. It is clear then that ORS 164.225 is a single statutory provision that can be violated in two ways. In light of that understanding, we turn to the provisions of each subsection.

ORS 161.067(1) is inapplicable because it authorizes separate convictions only when there have been violations of two or more separate statutory provisions in contrast to repeated violations of the same statutory provision. *See* ORS 161.067(3). ORS 161.067(2) allows separate punishment to be imposed on a defendant whose conduct violates only one statutory provision but involves multiple victims. As discussed above, defendant violated only one statutory provision. The state argues that subsection (2) is applicable because Hernandez and Villa-Lopez are different victims. However, ORS 161.067(2) defines how the number of victims is to be calculated for purposes of analyzing burglary convictions. It provides, in part, that:

> "[T]wo or more persons owning joint interests in real or personal property shall be considered a single victim for

---

[5] *See also State v. Sparks*, 150 Or App 293, 946 P2d 314 (1997), *rev den* 326 Or 390 (1998) (holding that a single entry into a motel room with the intent to commit more than one crime constituted one burglary).

purposes of determining the number of separately punishable offenses if the property is the subject of one of the following crimes:

"\* \* \* \* \*

"(d)   Burglary[.]"

That language is an express legislative determination that, for purposes of burglary statutes, the "victim" is unitary, regardless of the number of owners or residents of the property or the persons against whom the burglary conduct is directed. As applied to this case, the statute requires treating Hernandez, Villa-Lopez and any others with joint interests in the apartment as a single victim for purposes of imposing convictions. Therefore, ORS 161.067(2) also does not authorize separate convictions for defendant's conduct.

Finally, we turn to ORS 161.067(3), which allows separate convictions to be imposed on a defendant whose conduct violates only one statutory provision, but who violates the statute *repeatedly* against the same victim, with sufficient pause between each violation to allow the defendant to refrain from another violation. In ascertaining the legislature's intent regarding the word "victim" in subsection (3), there is nothing to suggest that it has a meaning other than the meaning expressed in subsection (2). Instead, the legislature has said in subsection (2) that burglary victims are to be treated as unitary "for purposes of determining the number of separately punishable offenses," which is the subject that subsection (3) addresses as well. Therefore, defendant's burglary of Hernandez's and Villa-Lopez's apartment had only one victim for purposes of subsection (3). The question then becomes whether there was a *repeated violation* of ORS 164.225 against that victim.

The word "repeated" means "renewed or recurring again and again." *Webster's Third New Int'l Dictionary,* 1924 (unabridged ed 1993). A "repeated" violation of a statutory provision is contrasted with a single, ongoing violation of a statutory provision. In the context of a burglary or a trespass to real property, a "repeated" violation (a trespass that is renewed) requires a trespass that is discrete from the initial trespass. If defendant's initial trespass merely continued

uninterrupted without being renewed, it was not a "repeated" trespass. On the facts of this case, defendant's initial trespass by entering unlawfully never ended. He testified:

> "Everything happened fast. The reasons I went inside of the apartment was to try to tell her [ ] its not a gun. Look at what it is. But as soon as I find out they was down the back—in the back area of the apartment. I didn't even try to go after her to try to explain because I knew she would be in more panic. And I just kind of sit down on the couch and wait."

In response to the question, "Wait for what?," defendant said, "I don't know. To think about it, what things going on in that moment. Probably they get off and ask me something or * * *." Rather than trespassing on the premises for a second time, defendant was still trespassing as a result of his unlawful entry when Villa-Lopez returned to the apartment and confronted him.

The provisions of ORS 161.067(3) confirm that defendant's violation of the burglary statute was not repeated. They require violations to be separated from each other by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. There was not a pause in defendant's trespass and then a renewal of the trespass. Consequently, the second trespass that ORS 167.067(3) requires before separate convictions for burglary can be entered never occurred.

Reversed and remanded for entry of single conviction of burglary and for resentencing; otherwise affirmed.