Argued and submitted January 29, 1997, affirmed April 29, petition for review allowed September 29, 1998 (327 Or 553)

STATE OF OREGON,
*Respondent,*

*v.*

JACOB BARRETT,
*Appellant.*

(9402002CR; CA A91378)

958 P2d 215

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DEITS, C. J.

De Muniz, J., concurring.

**DEITS, C. J.**

Defendant and two accomplices robbed a market in Klamath County. During the robbery, defendant pushed the owner of the store into a back room, then shot her when she returned to the outer portion of the store. Defendant was charged with three counts of aggravated murder (counts one through three), ORS 163.095, one count of murder (count four), ORS 163.115, and robbery in the first degree (count five), ORS 164.415. He pleaded no contest to all of the charges. Each count of the aggravated murder charges included the same victim but was based on a different underlying felony. The felonies underlying the aggravated murder convictions were: (1) first-degree robbery (count one); (2) second-degree kidnaping (count two); and (3) murder committed in an effort to conceal the identity of the perpetrator of a crime (count three).

■ The trial court merged the murder conviction with the conviction on the third count of aggravated felony murder and merged the independent robbery conviction with the first count of aggravated felony murder. The court then sentenced defendant to a life sentence with a 30-year minimum on count one, a life sentence with a 30-year minimum on count two to be served consecutive to count one, and a life sentence with a 30-year minimum on count three to run concurrent with count one. Defendant argues that the trial court erred in not merging the three aggravated murder convictions and by imposing the consecutive sentences. We affirm.

ORS 161.062(1) provides that "[w]hen the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." In *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989), the Supreme Court held that in order for ORS 161.062(1) to be applicable to defendant's conduct, the following questions must be answered in the affirmative:

"(1) Did defendant engage in acts that are 'the same conduct or criminal episode,' (2) did defendant's acts violate two or

more 'statutory provisions,' and (3) does each statutory 'provision' require 'proof of an element that the others do not.' "

The state asserts that this test was satisfied. It acknowledges that, while each count of felony murder required proof that defendant intentionally caused the death of the victim, each count also required proof of an element not required by the others. Count 1 required proof that defendant killed the victim "in the course and in furtherance of" first-degree robbery. Count 2 required proof that defendant killed the victim "in the course of and in furtherance of " second-degree kidnaping, and count 3 required proof that defendant killed the victim "in an effort to conceal the identity of a perpetrator" of the robbery.

Defendant argues, relying on the Supreme Court's decisions in *Crotsley* and *State v. Kizer*, 308 Or 238, 779 P2d 604 (1989), that in order to constitute a separate statutory provision for purposes of ORS 161.062(1) the statutory sections must address separate legislative concerns. Defendant points out that in *Kizer*, the Supreme Court concluded that the legislature was addressing the same legislative concern in each of the two subsections setting forth how forgery could be proven, ORS 165.007,[1] and, therefore, only one conviction could be entered. 308 Or at 243. The court noted that the DUII statute, ORS 813.010,[2] was a similarly written statute and, accordingly, only one DUII conviction could be entered, even if alternate means of committing DUII are proven. *Id.*

---

[1] ORS 165.007 provides, in part:

"(1) A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument; or

"(b) Utters a written instrument which the person knows to be forged."

[2] ORS 813.010 provides, in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

In defendant's view, the three charges here did not arise from three different crimes but rather from three different theories for proving the same crime. Defendant argues that, simply because the legislature provided for a number of ways of proving aggravated murder, it does not follow that the legislature intended to create distinct and separate crimes for each underlying felony in circumstances such as these where there is only one victim. Defendant contends that the aggravated murder statute is similar to the forgery statute in that under those statutes each theory of proving the respective crimes addresses the same legislative concern, and that under the aggravated murder statute the legislative concern addressed is engaging in criminal felony behavior that is likely to result in the death of someone. Consequently, in defendant's view, the statutory provisions here are not separate statutory provisions for purposes of ORS 161.062(1) and, therefore, only one aggravated murder conviction may be entered.

We have not addressed the specific argument that defendant makes here; namely, whether ORS 163.095 addresses a single legislative concern for purposes of ORS 161.062(1) or whether the various felonies listed by reference in ORS 163.095(1)(d) identify distinct and separate legislative concerns. We indirectly answered that question in our refusal to merge felony murder convictions that were based on different underlying felonies, even though the convictions involved the same victim, in *State v. Burnell*, 129 Or App 105, 877 P2d 1228 (1994). In *Burnell*, the defendant was convicted on two felony murder counts, each based on a different underlying felony but resulting in the death of a single victim. We held:

> "When a defendant is found guilty of multiple felony murder counts, if each of the underlying felonies requires proof of an element not required in another count, then the felony murder charges do not merge, *notwithstanding the fact that there was only one homicide victim.*" *Id.* at 109. (Emphasis supplied.)

*See also State v. Hessel*, 117 Or App 113, 122, 844 P2d 209 (1992), *rev den* 318 Or 26 (1993).

The basis for defendant's convictions on the aggravated murder counts here was that defendant "personally and intentionally committed homicide under the circumstances set forth in ORS 163.115(1)(b)." ORS 163.095(1)(d). The circumstances as set forth in ORS 163.115(1)(b) are the enumerated bases that we held would support separate felony murder convictions in *Burnell*. The only substantive distinction between the felony murder statute, ORS 163.115(1)(b), and the aggravated felony murder statute, ORS 163.095(1)(e), then, is that to prove aggravated felony murder, the state must prove that the defendant "personally and intentionally committed homicide" while involved in the commission of the underlying crime. We see no reason to conclude that separate convictions for felony murder with different underlying crimes do not merge but that separate convictions for aggravated murder with different underlying crimes do merge.

Defendant recognizes our holdings in *Burnell* and *Hessel* but urges us to reconsider those decisions.[3] We see no reason to depart from our holdings in *Burnell* and *Hessel*, and we do not agree with defendant that the Supreme Court's decision in *Kizer* requires otherwise. In *Kizer*, the court indicated that the term "statutory provision," as used in ORS 161.062, did not necessarily depend on a technical determination of how many subsections a statute included. The court explained that the critical question was whether the legislature was attempting to define a "single crime" by the different subsections. The court stated:

" 'Statutory provision' in ORS 161.062 was not defined to mean a section, subsection, or paragraph; consistent with

---

[3] Defendant asserts that our holding in *State v. Hessel*, 117 Or App 113, 122, 844 P2d 209 (1992), *rev den* 318 Or 26 (1993), on which our decision in *State v. Burnell*, 129 Or App 105, 877 P2d 1228 (1994), is based, at least in part, conflicts with our holding in *State v. Lyons*, 124 Or App 598, 863 P2d 1303 (1993), *aff'd* 324 Or 256, 924 P2d 802 (1996). We disagree. Our decision in *Lyons* is inapposite to this case. In *Lyons*, the defendant had separate convictions of aggravated murder, murder and robbery. We remanded the case to the trial court to amend the judgment to merge the two murder convictions and otherwise affirmed. *Lyons*, 124 Or App at 611. However, in that case, the state conceded that the simple murder conviction merged with the aggravated murder conviction because those two crimes did not require proof of different elements. *Id.* In contrast, in *Burnell* and *Hessel*, as well as in this case, it is not argued that each of the underlying felonies does not include an element that is not required for proof of the other underlying felonies.

its purposes, the term can be interpreted to mean any provision defining a 'single crime,' whatever visual form the provision is given." *Kizer*, 308 Or at 243.

In this case, each of the three counts of aggravated murder was based on a different underlying felony that required proof of an element not required by the other counts.

■ Further, we conclude that, consistent with the court's reasoning in *Crotsley*, defendant's record here should reflect that his conduct consisted of three different crimes. In its decision in *Crotsley*, the Supreme Court made it clear that merger was not automatically required if the same conduct and victim was involved. In *Crotsley*, there was one victim, a 14-year-old girl. The defendant was charged with first-degree rape and three counts of first-degree sodomy, because he used forcible compulsion. He was also charged with third-degree rape and three counts of third-degree sodomy, because the victim was under the age of 16. The defendant argued that the first- and third-degree rape, and the first- and third-degree sodomy charges, were alternative charges for the same criminal act and that "the legislature intended that convictions and sentences for lower degrees of rape and sodomy would be included within convictions and sentences for first degree rape and sodomy." *Crotsley*, 308 Or at 275-76. The court concluded that the first- and third-degree rape convictions did not merge and that the first- and third-degree sodomy convictions did not merge, even though the first- and third-degree rape convictions were based on the same act and the first- and third-degree sodomy convictions were based on the same act. The court explained:

"The proponents of ORS 161.062 clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes *by the same conduct* or during the same criminal episode should have a criminal record reflecting *each crime committed* rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct." *Id*. at 276-77.

We conclude that, in each of the three counts of aggravated murder of which defendant is convicted, the legislature was trying to address a separate and distinct legislative concern, each of which was intended to be a "single

crime." Conduct supporting each of the three aggravated murder convictions did not merely constitute three alternative ways to commit a single crime. Each involved different harm to the victim and, in our view, each constituted conduct that the legislature intended to punish separately. As in *Crotsley*, if a single conviction were entered here, it would not accurately portray the nature and extent of defendant's conduct.

The concurrence contends that the context of the text of ORS 163.095 suggests that the legislature did not intend to punish separately the various kinds of underlying acts that would support a conviction for aggravated murder. Rather, in the concurrence's view, the factors in ORS 163.095 are simply alternative theories to show that the offense of aggravated murder has been committed, and the legislature did not intend for those alternatives to be separately punished. 153 Or App at 632. In reaching that conclusion, the concurrence relies on the fact that "aggravated murder is 'murder as defined in ORS 163.115'" and that "murder is 'criminal homicide' that occurs when a person intentionally 'causes the death of another human being'" under ORS 163.005. 153 Or App at 631. The concurrence reasons that, because the focus of these definitions is on a single act, it follows that aggravated murder must be a single crime.

We do not find this definition to be determinative. The concurrence overlooks the fact that under ORS 163.115, murder can be proven by showing that a person intentionally committed a criminal homicide, ORS 163.115(1)(a), *or* by proving that a criminal homicide was committed "in the course of and in furtherance of" or while attempting to commit an enumerated crime or while attempting to flee the scene of the crime, ORS 163.115(1)(b), *or* by proving murder by abuse of a person under the age of 14, ORS 163.115(1)(c).[4] The felony murder statute, ORS 163.115(1)(b), provides the same list of crimes that ORS 163.095(1)(e) refers to to support a conviction for aggravated felony murder. As noted above, we have held that:

---

[4] ORS 163.115(1)(a) is commonly referred to as the "intentional murder" statute and ORS 163.115(1)(b) is commonly referred to as the "felony murder" statute. *Hessel*, 117 Or App at 117.

"When a defendant is guilty of multiple felony murder counts, if each of the underlying felonies requires proof of an element not required in another count, then the felony murder charges do not merge, notwithstanding the fact that there was only one homicide victim." *Burnell*, 129 Or App at 109.

Further, the concurrence focuses on the potential sentences for convictions of aggravated murder and concludes that, because the "practical effect" of imposing separate sentences for each conviction based on different underlying harms is the same as a single conviction for aggravated murder, the legislature did not intend that the "alternatives" be separately punished. However, whether *convictions* should merge is a separate question from whether convictions should merge for purposes of *sentencing*. *State v. Linthwaite*, 295 Or 162, 176, 665 P2d 863 (1983). The context of ORS 161.062(1) itself makes that clear when it states that there are as many separately *punishable* offenses as there are separate statutory *violations*. As we noted above, unless the convictions stand separately on defendant's criminal record, that record will not accurately reflect the nature and extent of defendant's actions. The fact that, under Oregon's complex sentencing scheme, defendant may ultimately serve the same amount of time in prison whether he is sentenced to consecutive sentences or whether his convictions, and thus, sentences, merge, is irrelevant. The trial court did not err in entering separate convictions on each of the aggravated murder convictions.

■    Defendant also argues that, even if multiple convictions could have been entered on the three counts of aggravated felony murder, the trial court erred in imposing consecutive sentences on counts one and two. He argues that "(1) the second aggravated felony murder offense was merely incidental to the aggravated felony murder conviction on count 1 and (2) there was no harm or risk of harm in Count 2 that was not already addressed by the sentence imposed in count 1."

ORS 137.123(5) provides that:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a)   That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b)   The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim[.]"

The trial court concluded that:

"The offense for which a consecutive sentence is contemplated, *i.e.*, Aggravated Murder, Count II, is not merely an incidental violation of a separate statutory offense, but was an indication of defendant's willingness to commit more than one criminal offense."

The evidence in the record supports the trial court's imposition of consecutive sentences on counts one and two. The state asserted that, if the case went to trial, it would present evidence that the victim was the proprietor of the store that defendant and his accomplices robbed. One of these individuals pulled a gun on the victim and forced her into the back room. After the victim returned to the store, defendant fought with and shot her. Defendant's pushing and fighting with the 72-year-old victim went beyond acts that were merely incidental to robbing the store because there is no evidence that it was necessary (*i.e.*, incidental) to lock up this victim in order to carry out the robbery. *See, e.g., State v. Sumerlin*, 139 Or App 579, 589, 913 P2d 340 (1996) (offenses not incidental where defendant need not have driven in an intoxicated state to commit offense of reckless driving and need not exceed the speed limit to be convicted of offense of driving under the influence of intoxicants).

In addition, there can be no doubt that the harm caused by the crime of robbery in the course of committing a murder is distinct from the harm caused by the crime of

kidnaping in the course of committing murder. ORS 137.123(5)(b). Robbery is concerned with loss of property, ORS 164.395; kidnaping is concerned with loss of personal liberty, ORS 163.225. The trial court did not abuse its discretion in imposing consecutive sentences on the separate aggravated felony murder counts. *See State v. Reeves*, 134 Or App 38, 42, 894 P2d 1170, *rev den* 321 Or 284 (1995).

Affirmed.

**DE MUNIZ, J.,** concurring.

Defendant frames his arguments here as presenting a question of merger, but the issue is more correctly stated as whether ORS 163.095(1) creates multiple crimes of aggravated murder or whether it creates the single crime of aggravated murder that may be committed in alternative ways. *See State v. Kizer*, 308 Or 238, 242 n 3, 779 P2d 604 (1989) (merger should be reserved for narrow situation when completion of one offense necessarily includes commission of acts sufficient to constitute violation of another statute). The answer depends on whether the legislature intended to address separate and distinct legislative concerns. *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989). The majority concludes that there are different harms that the legislature intended to punish separately. 153 Or App at 627-28. Although I agree, for the most part, that the majority's holding is dictated by our opinions in *State v. Hessel*, 117 Or App 113, 844 P2d 209 (1992), *rev den* 318 Or 26 (1993), and *State v. Burnell*, 129 Or App 105, 877 P2d 1228 (1994), were I writing on a clean slate, I would hold otherwise for the following reasons.

The answer to whether the legislature was addressing separate concerns is a question of statutory interpretation. ORS 163.095 provides that aggravated murder is "murder as defined in ORS 163.115 which is committed under, or accompanied by," certain circumstances; under ORS 163.115, murder is "criminal homicide" that occurs when a person intentionally "causes the death of another human being." ORS 163.005(1). Murder, thus, is the "death of another"—a single act.

When a defendant is convicted of aggravated murder, the sentence for murder is "complete": death, life imprisonment without the possibility of release or parole or life imprisonment. ORS 163.105. Multiple convictions for the death of one victim make no difference to that sentence. A conviction for aggravated murder mandates at least a life imprisonment with a minimum term of incarceration, now 30 years. ORS 163.105. After 25 years, even for prisoners with consecutive sentences, a parole hearing must be held. *Severy v. Board of Parole*, 318 Or 172, 179, 864 P2d 368 (1993); *see also Norris v. Board of Parole*, 152 Or App 57, 59, 952 P2d 1037, *rev allowed* 327 Or 82 (1998). Thus, imposing separate sentences for the separate underlying harms is without practical effect—the offender is still eligible for consideration for possible release.

Accordingly, considering the aggravated murder statute in the context of the statutory scheme of punishment for conviction of that offense, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), I conclude that the legislature intended to specify alternative ways that the offense could be committed but did not intend that those alternatives be separately punished.[1] In *dicta*, the Supreme Court has suggested that that is the answer. *See State v. Stevens*, 311 Or 119, 121 n 1, 806 P2d 92 (1991) ("Although defendant was convicted of killing only one person, the jury convicted him on three different theories of aggravated felony murder, ORS 163.095(2)(d), each based on a different underlying felony."); *State v. Boots*, 315 Or 572, 577, 848 P2d 76 (1993) (question before court was whether

---

[1] Legislative history does not show an intention to punish the underlying felonies separately. ORS 163.095 and ORS 163.105 were both part of HB 2011 (1977). Dennis Bromka, legal counsel for the House Judiciary Committee, explained that the measure was to avert a move to impose the death penalty and attempt a responsible, yet humane, way of dealing with a person who had committed a heinous crime. He explained that the Interim Judiciary Committee had taken the crime of murder, selected some categories of murder that it determined were especially heinous, and applied a 15-year minimum sentence; the bill was to designate the time that an offender would serve for that aggravated murder. He explained that the committee had decided that the sub-categories of murder should have a strict penalty of 15 years with no work release, leave, conjugal visits or opportunity to be outside prison walls. Minutes, House Judiciary Committee, January 18, 1977, p 2. That original attempt to avert the death penalty has obviously failed.

trial court erred in limiting retrial of the defendant to existence of aggravating factor).

In *Hessel* and *Burnell*, our controlling precedent, we did not analyze the legislative concerns in the aggravated murder statute. Instead, in *Hessel* we summarily concluded that there were separate statutory violations, because the counts charged violations of different statutes, each requiring proof of an element not required in any of the other counts. 117 Or App at 122.[2] In *Burnell*, we relied, without analysis, on *Hessel*. 129 Or App at 109. The Supreme Court has not revisited the issue of multiple convictions and sentences since our decisions and, for now, our precedents stand. However, I am now of the opinion that, under the *PGE* template, ORS 163.095(1) allows the state to plead and prove a charge of aggravated murder on alternative bases, but proof of more than one of those theories where there is but a single victim does not create a separate punishable offense.

---

[2] In *State v. Hessel*, 117 Or App 113, 844 P2d 209, *rev den* 318 Or 26 (1993), there was no issue of multiple sentences. The defendant's eight convictions were "merged into count 8 for sentencing." *Id*. at 122. Here, defendant's only challenge to the sentences is that they should not have been imposed consecutively. I agree with the majority's analysis of that argument.