Argued and submitted October 12, 1999, decision of the Court of Appeals reversed; judgment of circuit court reversed; case remanded to circuit court for resentencing September 14, 2000

STATE OF OREGON,
*Respondent on Review,*

*v.*

JACOB BARRETT,
*Petitioner on Review.*

(CC 9402002CR; CA A91378; SC S45463)

10 P3d 901

Peter Gartlan, Chief Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the brief was David E. Groom, Public Defender.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This criminal case presents the issue whether a sentencing court may impose multiple life sentences on defendant for the aggravated murder of one victim. The trial court concluded that it had such authority under *former* ORS 161.062(1), *repealed by* Or Laws 1999, ch 136, § 1 (providing for separate punishments for separate statutory violations)[1] and imposed two consecutive life sentences, as well as a third life sentence to run concurrently with the other two. The Court of Appeals affirmed that judgment. *State v. Barrett*, 153 Or App 621, 958 P2d 215 (1998). We allowed review and now reverse the decision of the Court of Appeals.

The following facts are not in dispute. Defendant and two accomplices robbed a convenience store at gunpoint. During the commission of the robbery, defendant forced the 72-year-old clerk into the back room. The clerk refused to stay there. Defendant shot and killed her when she returned to the store.

Defendant was charged in a five-count indictment with five felonies, including three counts of aggravated murder under ORS 163.095: (1) count 1, for aggravated felony murder, based on defendant's intentional killing of the victim during the commission of a robbery; (2) count 2, also for aggravated felony murder, based on defendant's intentional killing of the victim during the commission of a kidnaping; (3) count 3, for aggravated murder committed to conceal the perpetrator's identity; (4) count 4, for "simple murder" under ORS 163.115; and (5) count 5, for first-degree robbery under ORS 164.415. Defendant pleaded no contest to all counts, and the trial court found defendant guilty of all five charges. The court then "merged" count 4 (simple murder) with count 3

---

[1] After the Court of Appeals issued its decision in this case, the legislature repealed ORS 161.062. Or Laws 1999, ch 136, § 1. The first sentence of *former* ORS 161.062(1), which is at issue in this case, appears in identical form in ORS 161.067(1). Both *former* ORS 161.062 and ORS 161.067 became law in 1985. As this court explained in *State v. Crotsley*, 308 Or 272, 276 n 3, 779 P2d 600 (1989), both statutes began as identically worded proposals which, in effect, were enacted twice, one in an amended legislative version, *former* ORS 161.062, and, later, one in an unamended initiative version, ORS 161.067. ORS 161.067 remains in effect. Throughout this opinion, we refer to *former* ORS 161.062.

(aggravated murder to conceal identity) and merged count 5 (first-degree robbery) with count 1 (aggravated felony murder committed during a robbery). The trial court then imposed consecutive life sentences, with 30-year minimums each, on counts 1 and 2, and a third life sentence with a 30-year minimum on count 3, to run concurrently with the life sentence imposed on count 1. In support of its decision to impose consecutive sentences on counts 1 and 2, the trial court stated that those two offenses were not merely incidental violations of separate statutory provisions but, rather, indicated defendant's willingness to commit more than one offense.

On appeal, defendant assigned error, first, to the trial court's failure to merge all three convictions for aggravated murder and, second, to the trial court's imposition of consecutive sentences on the two aggravated felony-murder convictions. As noted, the Court of Appeals affirmed.

The Court of Appeals began its analysis by considering the first sentence of *former* ORS 161.062(1), which provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

The court observed that this court had held (in *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989)) that three preconditions must exist for *former* ORS 161.062(1) to be applicable to a defendant's conduct: (1) the defendant's acts must constitute the same conduct or criminal episode; (2) the defendant's acts must violate two or more "statutory provisions;" and (3) each "statutory provision" must require "proof of an element that the others do not." *Barrett*, 153 Or App at 623-24. The Court of Appeals also noted that, in *Crotsley*, this court held that a defendant violates separate "statutory provisions" for purposes of *former* ORS 161.062 if the statutory provisions address "separate legislative concerns." *Id.* at 624-25.

Based on the foregoing review of the statutory and case law, the Court of Appeals concluded that:

> "[I]n each of the three counts of aggravated murder of which defendant is convicted, the legislature was trying to address a separate and distinct legislative concern, each of which was intended to be a 'single crime.' Conduct support- ing each of the three aggravated murder convictions did not merely constitute three alternative ways to commit a single crime. Each involved different harm to the victim and, in our view, each constituted conduct that the legislature intended to punish separately."

*Id.* at 627-28. In reaching the foregoing conclusion, the Court of Appeals relied on its earlier holding in a case that posed a similar question, *State v. Burnell*, 129 Or App 105, 877 P2d 1228 (1994). In *Burnell*, the court held that a defendant could be sentenced separately under *former* ORS 161.062(1) for multiple felony-murder convictions involving only one victim, when each conviction was based on a separate underlying fel- ony, because each felony-murder conviction was based on proof of an element that had not been required for conviction on the other counts. *Id.* at 109. Noting that the same was true of the various aggravated murder convictions with which defendant in this case was charged and convicted, the court concluded that there was no reason to treat this case differ- ently from *Burnell. Barrett*, 153 Or App at 626.

■     For the reasons that follow, we conclude that, although defendant properly was charged with and convicted of multiple counts of aggravated murder based on the exis- tence of multiple aggravating circumstances, defendant's conduct in intentionally murdering one victim did not violate "two or more statutory provisions," as that phrase is used in *former* ORS 161.062(1). Accordingly, we reverse the decision of the Court of Appeals and remand the case to the trial court for resentencing.

As noted, defendant was charged with and convicted of three counts of aggravated murder, based on three differ- ent aggravating circumstances involving the intentional kill- ing of a single victim. Defendant does not dispute that his conduct constituted a single criminal episode for purposes of *former* ORS 161.062(1). Accordingly, as did the Court of

Appeals, we focus on the meaning of the phrase "two or more statutory provisions" in *former* ORS 161.062(1).

■ ■     We begin by noting that *former* ORS 161.062(1) requires *both* that a defendant's acts violate "two or more statutory provisions" *and* that each "statutory provision" require "proof of an element that the others do not." In relying on its earlier decision in *Burnell*, the Court of Appeals in this case appears to have held that the fact that each count of aggravated murder requires proof of an element that the others do not *itself* establishes the existence of two or more statutory violations. The use of the conjunctive in *former* ORS 161.062(1), however, indicates that two separate inquiries are required: First, a defendant must violate two or more statutory provisions; only then does the court consider whether each statutory provision requires proof of an element that the others do not.

■     We interpret the legislature's intent respecting the phrases "two or more statutory provisions" and "separate statutory violations" in *former* ORS 161.062(1) by using the methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We first look to the text of the statute, read in context, as the best indicator of the legislature's intent. *Id.* at 610-11. At that first level of analysis, we consider this court's prior interpretations of the wording at issue as part of the statutory context. *See Davis v. O'Brien*, 320 Or 729, 741, 891 P2d 1307 (1995) (so stating). If the intent of the legislature is clear after that text and context inquiry, the court looks no further. *PGE*, 317 Or at 611.

*Former* ORS 161.062(1) itself does not define specifically either "statutory provision" or "separate statutory violation." However, this court has discussed the meaning of "statutory provision" in two prior cases, *Crotsley* and *State v. Kizer*, 308 Or 238, 779 P2d 604 (1989).

In *Crotsley*, this court held that a defendant could be convicted and separately punished for first- and third-degree rape, as well as for first- and third-degree sodomy, based on the same criminal conduct. In that case, the defendant forcibly compelled the victim, who was 14 years old, into sexual intercourse and "deviate sexual activity." 308 Or at 275.

Because the defendant's conduct violated four different statutes—ORS 163.355(1) (third-degree rape, based on sexual intercourse with a female under the age of 16), ORS 163.385(1) (third-degree sodomy, based on deviate sexual intercourse with a person under the age of 16), ORS 163.375(1)(a) (first-degree rape, based on sexual intercourse by forcible compulsion), and ORS 163.405(1) (first-degree sodomy, based on deviate sexual intercourse by forcible compulsion), the court held that the defendant had violated "two or more statutory provisions." Respecting the phrase "two or more statutory provisions," this court made the following observation: "[W]e interpret the term 'two or more statutory provisions' to include prohibitions such as those in this case that address *separate and distinct legislative concerns*." 308 Or at 278 (emphasis added).

The *Crotsley* court then turned to the specific issue whether each of the provisions that the defendant had violated in that case required proof of an element that the others did not. The court concluded that different elements were required to prove each statutory provision, inasmuch as the first-degree rape and sodomy charges were based on the fact of forcible compulsion, and the third-degree rape and sodomy charges were based on the victim's age. *Id.* at 280. Under the circumstances, this court held that the third-degree rape and sodomy charges were not simply lesser-included offenses to the first-degree rape and sodomy charges. *Id.*

In *Kizer*, the court considered whether a defendant who falsely had made and then uttered a written instrument could be convicted and punished separately for two counts of forgery under ORS 165.007—one for making the instrument (in violation of ORS 165.007(a)) and one for uttering the same instrument (in violation of ORS 165.007(b)). In that case, this court stated that the phrase "statutory provision" in *former* ORS 161.062(1) "was not defined to mean a section, subsection, or paragraph; consistent with its purpose, the term can be interpreted to mean any provision defining a 'single crime,' whatever visual form the provision is given." 308 Or at 243. This court then held that the forgery statute defined a single crime, notwithstanding that, in violating ORS 165.007, the defendant actually committed two separate acts,

either of which would have been punishable alone. *Id.* at 243-44. The court based that conclusion on the legislative history of the forgery statute, which showed that the legislature intended that making and uttering a written instrument constitute a single crime. *Id.* at 243.

With the foregoing case law in mind, we next consider whether the various aggravating circumstances set out as subsections of ORS 163.095 "address separate and distinct legislative concerns" and, thus, are separate statutory provisions, each constituting a "single crime."

Aggravated murder is defined as "murder as defined in ORS 163.115 which is committed under, or accompanied by, any of" 18 different aggravating circumstances.[2] ORS 163.095. As pertinent to this case, aggravating circumstances include the following:

"(d)  Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b).

"(e)  The murder was committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

ORS 163.095(2).

ORS 163.115 provides, in part:

"(1)  Except as provided in ORS 163.118 [first-degree manslaughter] and 163.125 [second-degree manslaughter], criminal homicide constitutes murder:

"* * * * *

"(b)  When it is committed by a person, acting either alone or with one or more persons, who commits or

---

[2] One of the aggravating circumstances listed in ORS 163.095 is that the murder was committed during the course of one of 12 felonies listed in ORS 163.115(1)(b). ORS 163.095(2)(d). Moreover, one of those 12 felonies, ORS 163.115(1)(b)(H), refers to "[a]ny felony sexual offense in the first degree defined in this chapter." Chapter 163 includes four felony first-degree sexual offenses: ORS 163.375 (rape in the first degree), ORS 163.405 (sodomy in the first degree), ORS 163.411 (unlawful sexual penetration in the first degree), and ORS 163.427 (sexual abuse in the first degree). Viewing each of those underlying felonies as a separate aggravating circumstance brings the total number of alternative ways in which simple murder can be elevated to aggravated murder to 32.

attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(E)   Kidnaping in the second degree as defined in ORS 163.225;

"* * * * *

"(G)   Robbery in the first degree as defined in ORS 164.415."

Although this court stated in *Kizer* that the phrase "statutory provision" is not defined to mean either a section, subsection, or paragraph, we think that the use of a single section nonetheless is some indication that the legislature intended to define a single crime. The wording of the first sentence of ORS 163.095 supports that interpretation. It defines aggravated murder as murder "committed under, or accompanied by, *any*" of various aggravating circumstances. (Emphasis added.) "Any" means one or more.[3] Thus, the first sentence of ORS 163.095 suggests that any or all the enumerated circumstances simply serve to prove the single essential element of "aggravation."

In addition, the context of ORS 163.095 includes the statutes setting out the penalties for murder and aggravated murder. For a so-called "simple murder," that is, a murder unaccompanied by any aggravating circumstance, the statutory penalty is a life sentence with a mandatory minimum period of confinement of 25 years. ORS 163.115(5)(a), (b). If the murder is "aggravated," the penalties are enhanced: the defendant faces death, life imprisonment without the possibility of release or parole, or life imprisonment with a mandatory minimum sentence of 30 years. ORS 163.105(1)(a), (c). That context suggests a single legislative intent to punish

---

[3] *Websters Third New Int'l Dictionary*, 97 (unabridged ed 1993), defines "any" as "1: one indifferently out of more than two: one or some indiscriminately of whatever kind: * * * 2: one, some, or all indiscriminately of whatever quantity: a: one or more: not none * * *."

more severely certain murders that the legislature deems to be particularly heinous.

The Court of Appeals concluded that each of the aggravating circumstances at issue here involved different harms to the victim, demonstrating that the legislature intended to punish aggravated murder under each of the circumstances separately. We agree that the legislature undoubtedly intended that each of the *felonies* underlying a felony murder be separately punishable. It does not follow, however, that each subsection of the aggravated murder statute constitutes a separately punishable crime for purposes of *former* ORS 161.062(1). The wording of the statute that we just have reviewed shows that the harm that the legislature intended to address by ORS 163.095 was the intentional, aggravated killing of another human being. The aggravating factors constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder. That defendant's conduct in intentionally murdering the victim in this case was "aggravated" by "any," *i.e.*, one or more, act surrounding that conduct does not convert that conduct into more than one separately punishable offense.

As is evident from the foregoing analysis, we do not agree with the Court of Appeals' conclusion that "defendant's record here [with respect to aggravated murder] should reflect that his conduct consisted of three different crimes." *Barrett*, 153 Or App at 627. Nonetheless, for the reasons that follow, we agree that there are cogent reasons why defendant's record should depict the full extent of his involvement in the criminal conduct that led to the victim's death.

Each of the three theories of aggravated murder at issue here is one on which the jury had to agree unanimously. *State v. Boots*, 308 Or 371, 377, 780 P2d 725 (1989) (in order to convict defendant of aggravated murder, jury must unanimously agree on the facts required to establish each aggravating factor charged under ORS 163.095). If the trial court were to enter a conviction on only one count, and dismiss the other two, it always would be possible that an appeal would result in a reversal, for insufficient evidence, of the count that was selected to serve as the basis for conviction. With the

other two counts dismissed, defendant would be able to argue that he was entitled to a judgment of acquittal on the charge of aggravated murder. Such an outcome would be inappropriate, if there were evidence to sustain defendant's guilt under either of the other two counts, but there is no obvious mechanism for "reviving" counts that have been dismissed.

Defendant suggests that, in this case, the goal would have been met had the trial court simply entered one conviction for aggravated murder committed to conceal one's identity and separate convictions for robbery and kidnaping. As the foregoing discussion indicates, we do not believe that the trial judge was required to hazard a legitimate conviction in that way. We think that the appropriate procedure would have been to enter one judgment of conviction reflecting the defendant's guilt on the charge of aggravated murder, which judgment separately would enumerate each of the existing aggravating factors.[4] Because our rationale requires that defendant be resentenced, we remand the case to the trial court for that purpose.

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is reversed, and the case is remanded to the circuit court for resentencing.

---

[1] Under the foregoing analysis, a separate conviction could be entered on the robbery charge on remand. Robbery and aggravated murder clearly are set out in two different statutory provisions, ORS 164.415 and ORS 163.095. Moreover, in light of our conclusion that the various aggravating circumstances are not "elements" for purposes of *former* ORS 161.062(1) but, rather, alternative ways of proving the element of aggravation, the statutory provisions penalizing robbery and aggravated murder each involve an element that the other does not and address separate legislative concerns. Accordingly, for purposes of *former* ORS 161.062(1), we do not view robbery as a lesser-included offense to the aggravated-murder charge.