Argued and submitted September 21, 2011, affirmed December 12, 2012

KEVIN MITCHELL BUMGARNER,
*Petitioner-Respondent,*
*Cross-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Appellant,*
*Cross-Respondent.*

Malheur County Circuit Court
09087529P; A145099

295 P3d 52

Pamela J. Walsh, Assistant Attorney General, argued the cause for appellant-cross-respondent. With her on the briefs were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Jay W. Frank argued the cause for respondent-cross-appellant. With him on the briefs was Moule & Frank, Lawyers.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Petitioner in this post-conviction proceeding was convicted in 2004 of two counts of first-degree rape, ORS 163.375,[1] two counts of first-degree unlawful sexual penetration, ORS 163.411,[2] two counts of first-degree sexual abuse, ORS 163.427, two counts of first-degree kidnapping, ORS 163.235,[3] and one count of third-degree assault, ORS 163.165. Petitioner then filed this post-conviction relief

---

[1] ORS 163.375(1) provides:

"A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"(a) The victim is subjected to forcible compulsion by the person;

"(b) The victim is under 12 years of age;

"(c) The victim is under 16 years of age and is the person's sibling, of the whole or half blood, the person's child or the person's spouse's child; or

"(d) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

[2] Pursuant to ORS 163.411(1),

"Except as permitted under ORS 163.412, a person commits the crime of unlawful sexual penetration in the first degree if the person penetrates the vagina, anus or penis of another with any object other than the penis or mouth of the actor and:

"(a) The victim is subjected to forcible compulsion;

"(b) The victim is under 12 years of age; or

"(c) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

[3] Under ORS 163.235(1),

"A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom;

"(b) To hold the victim as a shield or hostage;

"(c) To cause physical injury to the victim;

"(d) To terrorize the victim or another person; or

"(e) To further the commission or attempted commission of any of the following crimes against the victim:

"(A) Rape in the first degree, as defined in ORS 163.375(1)(b);

"(B) Sodomy in the first degree, as defined in ORS 163.405(1)(b);

"(C) Unlawful sexual penetration in the first degree, as defined in ORS 163.411(1)(b)."

ORS 163.225(1), in turn, provides that

"[a] person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

proceeding, asserting, among other things, that his trial counsel was constitutionally inadequate for failing to argue to the sentencing court that the two guilty verdicts each for first-degree rape, first-degree unlawful sexual penetration, and first-degree kidnapping should merge into single convictions of each of those crimes. The post-conviction court agreed and granted relief on that ground. The state appeals, challenging the post-conviction court's decision. Petitioner cross-appeals, challenging the post-conviction court's denial of relief on other grounds. We affirm without discussion on petitioner's cross-appeal and, as discussed below, on the state's appeal, we conclude that the post-conviction court correctly determined that trial counsel was constitutionally inadequate for failing to argue the merger issue to the sentencing court. Accordingly, we affirm.

We recount the background facts as set forth in our opinion on direct appeal of the criminal convictions in this case:

"On a hot day in mid-August 2003, defendant, his daughter, and several members of his ex-wife's family gathered at a family member's house. Among the people present were the son and daughter of defendant's former brother-in-law, N and the victim, respectively.

"Early in the afternoon, the group decided to go swimming in a local river and have a barbeque. They took several vehicles. The four-year-old victim and her 10-year-old brother N rode with defendant in his truck. The truck had a bench seat and a standard transmission with a shifter on the floor. N sat by the passenger-side window, and the victim sat between N and defendant.

"After defendant left with the children, there was some confusion about the exact location where the group would reconvene, and defendant drove down a number of roads that led toward the river, looking for the others. Defendant had been drinking beer earlier, and he continued to drink during the drive. N testified that defendant, while going

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

down the roads, hit a pole and a tree, and backed into another tree. According to the victim, when defendant hit a tree, she was thrown hard into the gear shift. Each time they went a short way down those roads, defendant asked N to get out of the truck to look for the rest of the group. N testified that the victim appeared to be content when he left the truck, but would then be crying when he returned. N also testified that, while they all were in the truck, defendant kept reaching up the victim's dress and touching her upper thigh, 'where her underwear was.' After trying in vain to find the rest of the family for two to three hours, defendant took the children to his house.

"Meanwhile, other family members were concerned that defendant and the children had not shown up. According to defendant's daughter, 'my dad had been drinking [and family members] were realizing, oh, my God, you know, the kids are with him, he's not here, he's been drinking. You know, they were a little concerned.' Eventually, defendant's son's girlfriend called defendant's house from a telephone at a ranger station. When she got off the telephone, having confirmed that defendant was at his house and that he had the children with him, she was concerned. 'She said that [defendant] was being weird.' Defendant's daughter and defendant's former brother-in-law went to defendant's house to get the children.

"Defendant had a pool at his house that was partially filled with water and inhabited by water spiders and other insects. N testified that, after defendant took them to his house, he and the victim were by the pool looking at the insects when defendant came out of the house, first in a grey T-shirt and underwear and a short time later in a T-shirt with nothing on. N testified that defendant then took the victim into the house, leading her by the hand. A few minutes later, N heard the victim screaming. N testified, 'I knew she was getting hurt because she never screamed like that before. I've heard her throw a fit, and like I've heard her cry because she got hurt, and it wasn't like that. It was really, really bad.' After hearing his sister scream for five minutes, N went into the house, where he encountered defendant, emerging from his bedroom. Defendant obscured the doorway so that N could not see into the bedroom. Defendant returned to the bedroom, closing and locking the door.

"N pounded on the closed door, as the victim continued to scream from inside the bedroom. Defendant told N (through the closed door) that the victim was all right, but that she had been scratched by his cat. Defendant also said that he wanted the victim to take a bath, but that she didn't want to. N testified, 'I knew that those were excuses because I'd never heard her scream before like that.' N tried to open the door to the bedroom, but he could not move the handle. Meanwhile, the victim was screaming, 'I'm in here' and 'Help me.' N found a telephone and tried to dial 9-1-1, but he could not get the telephone to work. N then went to the next-door neighbor's house, who called police."

*State v. Bumgarner*, 219 Or App 617, 619-20, 184 P3d 1143, *rev den*, 345 Or 175 (2008), *cert den*, 555 US 1101, *adh'd to as modified on recons*, 229 Or App 92, 209 P3d 857 (2009) (footnote omitted; brackets in original). When police officers arrived at defendant's house, "they encountered defendant, dressed only in a tank top and with a partially erect penis." *Id.* at 621. After subduing defendant, officers found "the victim, who was wearing a sundress and underpants and was curled up in a fetal position on a recliner, dirty and sweaty." *Id.* A subsequent examination of the victim revealed tears in her vaginal area that were "consistent with penetration by a finger or penis." *Id.* at 623. The examining physician explained that, in this case, unlike most, he left the examination with the belief that the victim "had been raped." *Id.* (internal quotation marks omitted). DNA found on the victim's underwear "was consistent with having come from defendant," and DNA found on defendant "'could not be excluded' as coming from the victim." *Id.* at 625.

Defendant was charged with, among other things, two counts of first-degree rape, two counts of first-degree sexual penetration, and two counts of kidnapping. One count each of rape and unlawful sexual penetration were based on defendant having subjected the victim to forcible compulsion. The other rape and unlawful sexual penetration charges were based on the fact that the victim was a child younger than 12. With respect to the kidnapping charges, one was based on defendant having moved the victim from one place to another with the purpose of causing physical injury to her, and the other was based on defendant having secretly confined the victim in a place where she was not

likely to be found with the purpose of causing her physical injury. Ultimately, a jury found defendant guilty of all of those counts along with several other charges. At sentencing, the state argued that there was no basis to merge the rape, sexual penetration, and kidnapping convictions. With respect to the merger issue, defense counsel agreed with the state that the charges did not merge. The trial court did not merge any of those offenses, entered a judgment convicting defendant of all the counts on which the jury found him guilty, and imposed consecutive sentences totaling 730 months.

After his convictions were affirmed on appeal, *see Bumgarner*, 219 Or App 617, defendant sought post-conviction relief. As noted, among other grounds for relief, petitioner asserted that his trial counsel was constitutionally inadequate for failing to argue to the sentencing court that (1) the two guilty verdicts for first-degree rape should merge into a single first-degree rape conviction, (2) the two guilty verdicts for first-degree unlawful sexual penetration should merge into a single first-degree unlawful sexual penetration conviction, and (3) the two guilty verdicts for first-degree kidnapping should merge into a single first-degree kidnapping conviction. The post-conviction court agreed with petitioner that,

> "[a]t sentencing, the trial attorney was constitutionally inadequate and that inadequacy tended to affect the outcome of the sentencing. [*State v.*] *Barrett*[, 331 Or 27, 10 P3d 901(2000),] should have put the trial attorney on notice that the issue of merger needed to be argued. *Barrett* clarified former ORS 161.062(1) as it applies to aggravated murder, but the reasoning clearly shows that the decision was based on an analysis of the particular charges and their legislative intent. [*State v.*] *Parkins*[, 346 Or 333, 211 P3d 262 (2009),] makes that clear when in 2009 it addresses some of the charges in this case and required mergers. The trial attorney should then have seen this as an area of unsettled law and should have given the trial court the reasoning to apply *Barrett* and merge the two rapes, with one another, the two sexual penetrations with one another and the two kidnappings with one another."

Accordingly, the post-conviction court granted, in part, the petition for post-conviction relief and determined that

the case should "be sent back to the sentencing court for resentencing." The state appeals the judgment of the post-conviction court, asserting that the court "erred by granting petitioner's claim that trial counsel was inadequate for failing to argue that the criminal charges should merge." According to the state, at the time of petitioner's trial in this case, "what types of convictions merged under the anti-merger statutes was a developing area of law, in which the court considered the text of the various criminal statutes to determine merger in each case." Furthermore, according to the state, given the Supreme Court's decision in *State v. Crotsley*, 308 Or 272, 779 P2d 600 (1989), the law was contrary to a merger argument on petitioner's behalf.

"We review post-conviction proceedings for errors of law." *Snodgrass v. Lampert*, 210 Or App 390, 395, 150 P3d 1109, *rev den*, 342 Or 633 (2007). To determine whether a petitioner's attorney provided inadequate assistance under Article I, section 11, of the Oregon Constitution, we

> "'determine whether petitioner demonstrated by a prepon-derance of the evidence that [his lawyer] failed to exercise reasonable professional skill and judgment. Second, if we conclude that petitioner met that burden, we further must determine whether he proved that counsel's failure had a tendency to affect the result of his trial.'"

*Burdge v. Palmateer*, 338 Or 490, 492, 112 P3d 320 (2005) (brackets in *Burdge*) (quoting *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002)).

Here, the state does not appear to dispute that, in view of *Parkins* and *State v. White*, 202 Or App 1, 121 P3d 3 (2005), *aff'd*, 341 Or 624, 147 P3d 313 (2006), both decided after the underlying trial in this case, the convictions in question should have merged. In *Parkins*, the Supreme Court held that ORS 161.067(1)[4] requires the merger of multiple convictions of first-degree sexual abuse arising out of the same conduct and based on both forcible compulsion and

---

[4] ORS 161.067(1) provides:

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

the fact that the victim was under 12 years of age. Relying on *Barrett*, the court concluded that

> "the legislature intended to create the single crime of first-degree sexual abuse. The presence of more than one of the that convert a lower degree of sexual abuse to first-degree sexual abuse does not convert defendant's single act into separate crimes."

*Parkins*, 346 Or at 355. Likewise, in *White*, we held that multiple charges of first-degree burglary arising out of the same conduct must merge when they are based on alternate theories for second-degree burglary to first-degree burglary. 202 Or App at 12-13.

Under the reasoning of *Parkins* and *White*, the two rape charges which arose out of the same conduct, with one based on the presence of forcible compulsion and the other based on the victim being under 12, likewise should have merged into a single first-degree rape conviction. Similarly, the two first-degree unlawful sexual penetration charges (one based on forcible compulsion and the other on the age of the victim) should have merged into a single conviction. Also, the two kidnapping convictions (one based on defendant having moved the victim from one place to another with the purpose of causing physical injury to her and the other based on defendant having secretly confined the victim in a place where she was not likely to be found with the purpose of causing her physical injury) should have merged.

Though not challenging that the convictions should have merged, the state nevertheless maintains that, given the state of the law at the time of the trial, counsel's failure to argue the merger issue was reasonable. In the state's view, *Barrett*, cited by the post-conviction court, was not sufficient to require reasonable trial counsel to argue the issue. We disagree.

In *Barrett*, the Supreme Court considered an issue similar to the merger issues in this case: whether a sentencing court may impose multiple sentences on a defendant for the aggravated murder of a single victim.[5] The court looked at

---

[5] In making that determination, the court considered *former* ORS 161.062(1), *repealed by* Or Laws 1999, ch 136, § 1, the predecessor statute to ORS 161.067(1). The text of the two statutes is indistinguishable.

the statute defining aggravated murder, which stated that aggravated murder was "'murder as defined in ORS 163.115 which is committed under, or accompanied by, any of'" a list of enumerated circumstances. 331 Or at 34 (quoting ORS 163.095). The court reasoned that

> "the use of a single section * * * is some indication that the legislature intended to define a single crime. The wording of the first sentence of [the aggravated murder statute] supports that interpretation. It defines aggravated murder as murder 'committed under, or accompanied by, *any*' of various circumstances. (Emphasis added.) 'Any' means one or more. Thus, the first sentence of [the statute] suggests that any or all of the enumerated circumstances simply serve to prove the single essential of 'aggravation.'"

*Id.* at 35 (footnote omitted). Thus, the court held that

> "the aggravating factors constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder. That defendant's conduct in intentionally murdering the victim in this case was 'aggravated' by 'any,' *i.e.*, one or more, act surrounding that conduct does not convert that conduct into more than one separately punishable offense."

*Id.* at 36.

Thereafter, this court decided *State v. Lucio-Camargo*, 186 Or App 144, 62 P3d 811 (2003), and applied the reasoning in *Barrett* to the merger of burglary convictions.[6] In that case, we explained that, as in *Barrett*, "the threshold question is whether defendant violated more than one statutory provision within the meaning of ORS 161.067(1)," and we concluded that the burglary statute "is a single statutory provision that can be violated in alternative ways and that, consequently, defendant's conduct was a violation of only one statutory provision for purposes of that subsection." *Lucio-Camargo*, 186 Or App at 156.

---

[6] As we explained in *Ross v. Hill*, 235 Or App 340, 347 n 4, 231 P3d 1185, *rev den*, 349 Or 56 (2010), "the state petitioned for review of our opinion in *Lucio-Camargo* and * * * the Supreme Court allowed review, but * * * the defendant subsequently died. On February 18, 2004, the Supreme Court dismissed the petition for review and vacated our decision in *Lucio-Camargo*. 336 Or 442, 86 P3d 1139 (2002)." In view of that history, we observed that *Lucio-Camargo* was discussed to demonstrate the state of the law at the time of sentencing.

As noted, the state points to *Crotsley* as support for its assertion that petitioner's trial counsel was reasonable in not arguing the merger issue. We note, however, that that case involved the question "whether separate first and third degree convictions and sentences may be imposed for a single act of rape or sodomy," 308 Or at 274, and not, as in *Barrett*, whether multiple convictions could be entered based on violations of different subsections of the same statute. In any event, even assuming that *Crotsley* indicates that, at the time of sentencing in this case, there was uncertainty in the law regarding when convictions would merge,[7] such uncertainty did not relieve trial counsel of the obligation to assert that the sentences at issue were subject to merger.

"The existence of uncertainty as to the nature of the applicable law does not, by itself, excuse a lawyer from making arguments about that uncertain law, if the argument would benefit the client." *Ross v. Hill*, 235 Or App 340, 348, 231 P3d 1185, *rev den*, 349 Or 56 (2010). Rather, as set forth above, the applicable standard is "whether counsel exercised reasonable professional skill and judgment." *Burdge*, 338 Or at 500. Thus, in "some cases, a lawyer's failure to present an unsettled question may be inadequate assistance of counsel." *Id.* at 499. "Even if the meaning of a statute remains unsettled, the statute may so obviously offer possible benefits to a defendant that any lawyer exercising reasonable professional skill and judgment would raise it." *Id.* at 500. "Thus, the question we must address is whether, despite the ambiguity in the case law, the benefits to defendant of raising the merger issue were so obvious that any lawyer exercising reasonable professional skill and judgment would have done so." *Ross*, 235 Or App at 349.

In *Ross*, we addressed that question with regard to whether reasonable counsel should have raised the merger of two first-degree kidnapping charges and concluded "that the answer is yes." *Id.* We observed that, "[a]s the Supreme Court pointed out in *Barrett*, the question is one of statutory construction." *Id.* We reasoned that the Supreme Court

---

[7] *State v. O'Neall*, 115 Or App 62, 836 P2d 758, *rev den*, 314 Or 574 (1992), cited by defendant and decided several years before the Supreme Court's decision in *Barrett*, likewise illustrates uncertainty in the law at the time of sentencing in this case.

"made clear in *Barrett* that the question whether the defendant has violated more than one statutory provision within the meaning of ORS 161.067(1) is largely dependant on an interpretation of the statutory provisions defining the offense and whether they show that by listing separate theories for conviction, the legislature intended to address separate and distinct legislative concerns. At the time of petitioner's sentencing, reasonable counsel would have understood that \*\*\* the question was open whether multiple kidnapping convictions based on separate theories must merge."

*Id.* (citation and internal quotation marks omitted).

Similarly, in this case, given the reasoning in *Barrett*, we conclude that reasonable counsel would have understood that the merger of the first-degree rape, unlawful sexual penetration, and kidnapping convictions was an unsettled area of the law. As in *Ross*, given the "similarity in the structure" of the statutes, "reasonable counsel should also have concluded that raising the issue of merger in the context" of this case was likely to be beneficial to petitioner. 235 Or App at 249. Given the obvious possible benefits to petitioner of raising the merger issue before the trial court, we conclude that an attorney exercising reasonable judgment and skill would have done so. Accordingly, we agree with the post-conviction court that post-conviction relief was appropriate with regard to that issue.

Affirmed.