TOOKEY, J.
*346 We consider this criminal case for the fourth time following our prior decisions in State v. Galloway , 202 Or. App. 613, 123 P.3d 352 (2005) ( Galloway I ), vac'd and rem'd , 345 Or. 315, 195 P.3d 62 (2008), State v. Galloway , 225 Or. App. 67, 200 P.3d 175 (2009)
*434 ( Galloway II ), and Galloway v. Nooth , 247 Or. App. 164, 268 P.3d 736 (2011) ( Galloway III ). Defendant appeals the supplemental judgment of conviction that was entered following his limited retrial on several counts, raising six assignments of error. We reject defendant's third through sixth assignments of error without further discussion. We write only to address defendant's first and second assignments of error, in which he argues that the trial "court erred by granting the state's motion for issue preclusion" and instructing the jury "that defendant was guilty of arson and recklessly endangering another person [as a matter of law,] and that those issues were removed from the jury's consideration." For the reasons that follow, we affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
A. Historical Facts
The pertinent facts are mostly procedural and undisputed. To minimize confusion about the parties when describing several proceedings, we refer to defendant throughout this opinion as "defendant" even when he was the petitioner for post-conviction relief in Galloway III . We refer to the responding party in Galloway III as the superintendent.
In May 2002, defendant was charged by Crook County's Chief Deputy District Attorney, Ron Brown, with two counts of third-degree theft, one count of fourth-degree assault, three counts of resisting arrest, one count of disorderly conduct, one count of furnishing alcohol to a minor, and one count of minor in possession of alcohol. Galloway I , 202 Or. App. at 615, 123 P.3d 352. In August 2002, two fires occurred. Id. at 616, 123 P.3d 352. The first fire occurred in the Brown family home at approximately 3:30 a.m. Id. As Brown's home was filling with smoke, Brown woke up and was able to evacuate with his wife and three children. Galloway III , 247 Or. App. at 167, 268 P.3d 736.
*347 The second fire occurred at Ochoco Creek Park, a few blocks from Brown's home. Galloway I , 202 Or. App. at 616, 123 P.3d 352.
Defendant was subsequently arrested and indicted on 27 charges stemming from the two fires. Id. at 615-16, 123 P.3d 352. At defendant's first trial, he was found guilty of all 27 charges-nine counts of attempted aggravated murder, ORS 161.405 ; ORS 163.095 (Counts 1-9), five counts of attempted murder, ORS 161.405 ; ORS 163.115 (Counts 10-14), six counts of first-degree arson, ORS 164.325 (Counts 15-20), two counts of first-degree burglary, ORS 164.225 (Counts 21 and 22), four counts of recklessly endangering another person, ORS 163.195 (Counts 23-26), and one count of arson in the second degree, ORS 164.315 (Count 27). Id. at 615 n. 1, 123 P.3d 352. "The second-degree arson charge was based on the fire at the park; all of the other counts were based on the fire at Brown's home." Galloway III , 247 Or. App. at 166, 268 P.3d 736.
B. Procedural Background
1. Defendant's direct appeals in Galloway I and Galloway II
Defendant appealed and, in Galloway I , we exercised our discretion to "vacate[ ] defendant's sentences and remanded for resentencing because the trial court had [plainly erred when it] imposed a departure sentence based on a judicial finding that defendant's crime had created a serious risk to human life." Galloway II , 225 Or. App. at 69, 200 P.3d 175. The Supreme Court vacated our decision in Galloway I "in light of State v. Ramirez , 343 Or. 505, 173 P.3d 817 (2007), adh'd to as modified on recons. , 344 Or. 195, 179 P.3d 673 (2008), and State v. Fults , 343 Or. 515, 173 P.3d 822 (2007)," and remanded the case to us to determine whether we had properly exercised our discretion to correct the plain error. Id. On remand from the Supreme Court, in Galloway II , we "conclude[d] that, under Ramirez , our exercise of discretion in Galloway I was erroneous," and we affirmed defendant's convictions. Id.
2. Defendant's petition for post-conviction relief in Galloway III
Defendant then brought an action for post-conviction relief, and the post-conviction court granted a new trial on all of defendant's convictions on the ground that defendant's *348 "trial counsel provided inadequate assistance (1) by failing to investigate and discover evidence that would have undermined *435 the state's case that the threat posed by the fire was serious and (2) by failing to discredit [defendant's] codefendant." Galloway III , 247 Or. App. at 166, 268 P.3d 736. The superintendent of the Snake River Correctional Institution appealed, arguing that the post-conviction court had erred in concluding that defendant's counsel provided inadequate assistance and, alternatively, that, if defendant was entitled to relief, "it should extend only to the attempted murder and attempted aggravated murder convictions." Id. at 181, 268 P.3d 736.
We concluded that the post-conviction court did not err in concluding that defendant's trial counsel provided inadequate assistance by failing to investigate and discover evidence that the threat posed by the fire was serious because "[t]he state's case as to intent to kill rested to a significant degree on the evidence of the threat posed by the fire." Id. at 183, 268 P.3d 736. We further concluded that, "with respect to the charges that contained, as an element, intention to kill, [defendant] was prejudiced by [trial counsel's] failure to provide adequate assistance of counsel, and furthermore, that [defendant] is entitled to post-conviction relief on those charges." Id. at 184-85, 268 P.3d 736. With respect to trial counsel's failure to discredit defendant's codefendant, we concluded, however, that "[t]rial counsel's treatment of [the codefendant's] testimony was not constitutionally inadequate." Id. at 185, 268 P.3d 736.
In light of those conclusions, we reasoned that
"trial counsel's performance was constitutionally inadequate only with respect to her failure to investigate, and put on evidence regarding, the lethal potential of the fire that [defendant] set at the Browns' home. That failure obviously had no tendency to affect the jury's verdicts regarding crimes that did not have, as an element, an intention to kill or to cause injury to a person or persons. Thus, the inadequacy had a tendency to affect the verdicts in the attempted aggravated murder and attempted murder charges. It also had a tendency to affect the first-degree burglary verdict; that crime, as charged and prosecuted in this case, involved entering and remaining in a building and, therein, 'attempt[ing] to cause physical injury to any person.' ORS 164.225(1)(b). The inadequacy did not, *349 however, have an effect on the arson charges, neither first- nor second-degree arson requires the state to prove an intention to harm persons. ORS 164.135 ; ORS 164.325. The same is true, obviously, of recklessly endangering."
Id. at 186, 268 P.3d 736 (second brackets and emphasis in original). Our disposition of the case stated, "Judgment vacated and remanded for entry of judgment granting petition for post-conviction relief with respect to convictions for attempted aggravated murder, attempted murder, and burglary in the first degree, and denying such relief on all other convictions." Id.
On remand, the post-conviction court entered a judgment that granted post-conviction relief according to our disposition. That judgment provided, in pertinent part:
"As to the charges of Attempted Aggravated Murder, Attempted Murder, and Burglary in the first degree, the defense provided to [defendant] does not meet constitutional standards and [defendant] is entitled to a new trial on those charges. The convictions for Attempted Aggravated Murder, Attempted Murder, and Burglary in the first degree are set aside, the sentences vacated and those charges are returned to the trial department for a new trial. The remaining verdicts stand and [post-conviction relief] is denied on those charges."
That judgment also provided that it "shall constitute a final judgment for purposes of appellate review and for purposes of res judicata ."
3. Defendant's retrial following Galloway III
On remand to the trial court, defendant was retried on nine counts of attempted aggravated murder (Counts 1-9), five counts of attempted murder (Counts 10-14), and two counts of first-degree burglary (Counts 21 and 22). The state filed a pretrial "motion for issue preclusion as to defendant's being guilty of [the] crimes of arson and recklessly endangering another." The state relied on *436 State v. Boots , 315 Or. 572, 848 P.2d 76, cert. den. , 510 U.S. 1013, 114 S.Ct. 606, 126 L.Ed.2d 571 (1993) ( Boots II ), to argue that defendant should be precluded from "relitigating the issues giving rise to his conviction for arson in the first degree" and that it should be allowed "to use the defendant's prior conviction as proof of an element of the *350 crime[s]" of attempted aggravated murder, attempted murder, and first-degree burglary. Defendant relied on State v. Davis , 265 Or. App. 179, 335 P.3d 1266 (2014), arguing that " Davis clearly holds that the offensive use of issue preclusion against a defendant is constitutionally inappropriate."
The trial court agreed with the state that Boots II is the controlling authority. The court reasoned that, in Davis , "the original jury found defendant guilty of criminal acts (DUII and manslaughter), and then the state tried defendant for a criminal act arising out of the original trial * * * in * * * a new prosecution for perjury which obviously the jury did not consider in the first trial," whereas, in Boots II and this case, "[b]oth trials involved the same criminal episode" and "the second jury considered the exact same charge[,] * * * not a different criminal act as in Davis ." The trial court also noted that, if we had "believed it was necessary to relitigate the elements of arson and recklessly endangering charges, then the reversal of the post-conviction court regarding the arson and recklessly endangering convictions would be meaningless," and "[b]y reversing the post-conviction court on th[o]se issues, the Court of Appeals set the parameters of the retrial as Boots II allows." Accordingly, the trial court concluded that, pursuant to our disposition in Galloway III , the elements of arson and recklessly endangering "were satisfied-and remained satisfied-as a matter of law." The trial court ruled that "the defense is precluded from disputing any of the elements proven by the state in obtaining the original arson and reckless endangering convictions" and that "the jury shall receive instructions that as a matter of law defendant has committed the acts of arson and recklessly endangering."[1]
The court's jury instruction stated:
"You are instructed that it has been determined as a matter of law that defendant committed the act of arson and reckless endangering another, and those questions have been removed from your consideration.
*351 "You are to consider whether, at the time defendant committed those acts, defendant had the intent to cause the death of another person."
The jury found defendant guilty of one count of attempted aggravated murder (Count 9), one count of attempted murder (Count 10), and two counts of first-degree burglary (Counts 21 and 22), and acquitted defendant of eight counts of attempted aggravated murder (Counts 1-8) and four counts of attempted murder (Counts 11-14). The trial court merged the guilty verdicts for attempted murder and attempted aggravated murder into a single conviction for attempted aggravated murder and imposed a 120-month sentence on that conviction. The court also merged the two guilty verdicts for first-degree burglary into a single conviction for first-degree burglary and imposed a 36-month sentence for that conviction. The court entered a supplemental judgment that ordered defendant to serve those sentences consecutively to the sentences that were not vacated by the post-conviction court following Galloway III .
II. ANALYSIS
A. The Parties' Arguments on Appeal
On appeal, in a combined argument pursuant to ORAP 5.45(6), defendant contends that the trial "court erred by granting the state's motion for issue preclusion" and instructing the jury "that defendant was guilty of arson and recklessly endangering another person [as a matter of law,] and that those issues were removed from the jury's consideration." Defendant argues that our "decision in Davis *437 entirely controls both of these assignments of error" and that Boots II is distinguishable because arson and reckless endangerment are not lesser-included offenses of attempted aggravated murder, attempted murder, and burglary.[2] The state asserts that "[t]he trial court correctly held that Boots II controls this issue" because "[t]his case-like Boots II and unlike Davis -involves an affirmance on direct *352 appeal of an adjudication of guilt and then enforcement of that adjudication on remand for retrial in the same case ." (Emphasis in state's brief.) In light of the parties' dueling motions at trial and their arguments on appeal, we begin by discussing Boots II , its progeny, and Davis .
B. The Applicable Case Law
1. Boots II
In Boots , the defendant was charged with alternative theories of aggravated murder, one for killing the victim in the course of committing first-degree robbery and the other for killing the victim in an effort to conceal the identity of the perpetrators of that crime. Boots II , 315 Or. at 574, 848 P.2d 76. In State v. Boots , 308 Or. 371, 381, 780 P.2d 725 (1989) ( Boots I ), the Supreme Court concluded that the trial court erroneously instructed the jury that it need not agree unanimously on either of those aggravated murder theories. The Supreme Court also "concluded that the jury necessarily found by its general verdict on the aggravated murder count that defendant was guilty of murder under ORS 163.115, and that the instructional error did not affect that implicit finding." Boots II , 315 Or. at 575, 848 P.2d 76 (citing Boots I , 308 Or. at 381, 780 P.2d 725 ). Accordingly, it reversed the aggravated murder conviction with an instruction that, " '[o]n remand, the state may choose whether to reduce the defendant's conviction and sentence to murder under ORS 163.115 or to retry the charge of aggravated murder.' " Id. (quoting Boots I , 308 Or. at 381, 780 P.2d 725 ). The court's disposition stated, in pertinent part, that "[t]he circuit court's judgment of conviction of aggravated murder is reversed and the case is remanded to the circuit court for further proceedings." Boots I , 308 Or. at 381, 780 P.2d 725.
Subsequently, on remand, the state elected to retry the aggravated murder charge, pursuing only the murder-to-conceal theory, and "moved to limit the new trial only to the determination of whether or not the defendant is guilty of the enhanced crime of Aggravated Murder." Boots II , 315 Or. at 575, 848 P.2d 76 (internal quotation marks omitted). The trial court granted the state's motion, and "[t]he jury returned a verdict of guilty to the crime of aggravated murder." Id. The defendant appealed, assigning error to the trial court's decision to order a limited retrial. Id. at 575-76, 848 P.2d 76. The Supreme *353 Court noted that its "remand order neither expressly required the trial court to retry defendant on every element of an aggravated murder charge, nor expressly limited the trial court to a trial on the existence of an aggravating factor." Id. at 577, 848 P.2d 76 (emphasis in original). As a result, the court concluded that the trial court could "order a retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense." Id. The court further concluded that the limited retrial did not violate the "[d]efendant's right to trial by jury on all elements of the offenses of which he has been convicted," because "the jury in defendant's first trial properly had found him guilty of the crime of murder," and the jury in the second trial "found him guilty of aggravated murder." Id. at 578-79, 848 P.2d 76.
2. Wilson III
Similarly, in State v. Wilson , 323 Or. 498, 500, 918 P.2d 826 (1996), cert. den. , 519 U.S. 1065, 117 S.Ct. 704, 136 L.Ed.2d 625 (1997) ( Wilson I ), a jury convicted the defendant of nine counts of aggravated murder, one count of murder, two counts of first-degree kidnapping, one count of second-degree kidnapping, one count of third-degree assault, and one *438 count of second-degree abuse of a corpse. The Supreme Court concluded that the trial court erred in admitting evidence of certain portions of a plea agreement that contained an opinion as to a witness's credibility. Id. at 501-03, 918 P.2d 826. The court also concluded, however, that the error was "harmless error as to the defendant's convictions for kidnapping, assault, and abuse of a corpse." Id. at 503-04, 918 P.2d 826. The court's disposition stated, "The judgment of conviction is reversed with respect to the charges of aggravated murder and murder. The judgment of conviction is otherwise affirmed. This case is remanded to the circuit court for further proceedings." Id. at 519, 918 P.2d 826.
In State v. Wilson , 161 Or. App. 314, 316-18, 985 P.2d 840 (1999), rev. den. , 330 Or. 71, 994 P.2d 133 (2000) ( Wilson II ), the defendant appealed, challenging the sentences that the trial court imposed on the affirmed kidnapping and assault convictions at his resentencing. At that resentencing hearing, the trial court, following the guidance provided by Boots II , "determined that a limited retrial on the murder and aggravated murder charges would not involve relitigation of *354 the underlying felonies for which defendant's convictions had been affirmed, even though those felonies provided the underlying bases for some of the aggravated murder charges," and it sentenced the defendant on the affirmed kidnapping and assault convictions. Id. We rejected the defendant's challenges to the sentences imposed on the kidnapping and assault convictions and affirmed those convictions. Id. at 318-24, 985 P.2d 840.
At the defendant's separate retrial on the counts of aggravated murder and murder, the trial court instructed the jury "to accept as already proven that defendant had committed the underlying felonies (e.g. , kidnapping and assault) that served as the basis for certain elements of the aggravated murder charges." State v. Wilson , 216 Or. App. 226, 234, 173 P.3d 150 (2007), rev. den. , 344 Or. 391, 181 P.3d 770 (2008), adh'd to as modified on recons. , 228 Or. App. 365, 208 P.3d 523 (2009) ( Wilson III ). The "defendant was found guilty of five counts of the lesser-included offense of attempted aggravated murder, each on a different theory, and one count of the lesser-included offense of attempted murder." Id. at 229, 173 P.3d 150. On appeal, in Wilson III , the defendant assigned error to the trial court's instruction to "the jury, based on the Oregon Supreme Court's affirmance of a prior appeal of defendant's conviction for other felonies arising from this same incident, that the state had proved those crimes for purposes of the jury's consideration of the aggravated murder charges." Id. at 228, 173 P.3d 150. We noted that, in Boots II , "the Supreme Court held that, where all elements of a murder had been found in the defendant's original jury trial, the trial court correctly limited the jury's consideration on retrial of an aggravated murder charge to those elements necessary to establish the greater offense." Id. (citing Boots II , 315 Or. at 578-79, 848 P.2d 76 ). Because "the Oregon Supreme Court had affirmed defendant's convictions on those underlying felonies in Wilson I , 323 Or. at 519, 918 P.2d 826," we concluded that the defendant could not prevail on that assignment of error under the reasoning of the court's decision in Boots II .[3] Id.
*355 In Wilson III , the defendant also argued that the trial court erred by failing to merge "his convictions on retrial for attempted aggravated murder and attempted murder * * * with the convictions for the underlying felonies that were affirmed by this court in Wilson II ." Id. at 234-35, 173 P.3d 150. We rejected the defendant's merger argument on two grounds. First, because "[k]idnapping and assault convictions require proof of the completed crimes of kidnapping and assault," and because "attempted aggravated murder, * * * regardless of the theory, requires proof that a defendant 'intentionally *439 engages in conduct which constitutes a substantial step toward commission of' aggravated murder," each statutory provision requires proof of an element that the others do not. Id. at 236, 173 P.3d 150 ; see also Martinez v. Cain , 293 Or. App. 434, 435-36, 428 P.3d 976, 976-77 (2018) (concluding that robbery conviction did not merge with attempted aggravated murder conviction). Second, we noted that the Supreme Court's decision in State v. Barrett , 331 Or. 27, 37 n. 4, 10 P.3d 901 (2000), "indicated that offenses that constitute aggravating circumstances for purposes of proving theories of aggravated murder are not lesser-included offenses that merge into convictions for aggravated murder." Wilson III , 216 Or. App. at 236-37, 173 P.3d 150 (emphasis in original). Thus, although the kidnapping and assault charges in Wilson III were not lesser-included offenses of aggravated murder or attempted aggravated murder, we applied the Supreme Court's reasoning in Boots II and affirmed the trial court's decision to order a limited retrial on the remaining elements of the aggravated murder charges. Id. at 234, 173 P.3d 150.
3. Davis
Conversely, in Davis , the defendant was charged with manslaughter and DUII "in connection with a fatal automobile accident in which two of defendant's friends were killed." 265 Or. App. at 180, 335 P.3d 1266. At trial, the defendant testified that he was not driving the vehicle at the time of the accident. Id. "Despite that testimony, the jury found defendant guilty of manslaughter and DUII." Id. Implicit in the jury's *356 guilty verdict "was a conclusion that defendant had been driving the vehicle at the time of the accident." Id.
The state then charged the defendant with perjury in a separate case for his allegedly false testimony in the manslaughter and DUII trial. Id. Specifically, the state alleged that the "defendant committed perjury when he testified in his prior trial that he was not driving at the time of the accident." Id. at 193, 335 P.3d 1266. Perjury requires the state to prove "that the defendant made a false sworn statement about a material issue, knowing it to be false." Id. (citing ORS 162.065 ). Therefore, whether the "defendant was, in fact, driving at the time of the accident [was] an element of the offense." Id.
At a pretrial hearing for the perjury trial, the state sought a special jury instruction to "instruct the jury that certain facts related to the perjury case had been proved beyond a reasonable doubt in defendant's first trial." Id. at 180, 335 P.3d 1266. The trial court ruled that it would give the state's special instruction and, at the close of trial, the court instructed the jury, in relevant part, that, " 'In a previous proceeding in this court, [defendant] was found beyond a reasonable doubt to have recklessly caused the death of [the victims] on September 18th[, 2010,] * * * while [defendant] was driving a motor vehicle under the influence of intoxicants.' " Id. at 181, 335 P.3d 1266 (emphasis, ellipsis, and brackets in original). The defendant was found guilty of perjury. Id. at 182, 335 P.3d 1266.
On appeal, the defendant argued that "the instruction removed an element of the crime from the jury's consideration and, therefore, violated his state and federal constitutional rights to a jury trial on all elements of the charged crime." Id. at 180, 335 P.3d 1266. The state, relying on Boots II and other case law, argued that "Oregon courts have upheld the application of issue preclusion against defendants in criminal cases." Id. at 182, 335 P.3d 1266. We stated that the state's reliance on Boots II was misplaced "because the majority opinion in Boots II did not address whether issue preclusion could be used against [a] defendant," and noted that "[t]he only mention of issue preclusion in the opinion was in the sharp dissent by Justice Unis," while "the majority focused on the scope of remand." Id. at 186-88, 335 P.3d 1266. We reasoned that Boots II did *357 not apply to the circumstances presented in Davis because Boots II "involved a retrial on the aggravated element of the greater offense," whereas Davis involved "two distinct criminal cases * * * and two separate criminal prosecutions in which defendant had a constitutional right to a jury trial." Id. at 188, 335 P.3d 1266. We concluded that, "[b]ecause the state's issue preclusion instruction removed *440 an element from the jury's consideration in violation of defendant's right to a jury trial under Article I, section 11, of the Oregon Constitution, the trial court erred in giving the state's instruction." Id. at 194, 335 P.3d 1266.
C. The Holdings of Boots II and Wilson III Apply in This Case
In sum, Boots II and Wilson III focus on the scope of remand and instruct us that, if the remand order permits a limited retrial, the trial court can "order a retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense." Boots II , 315 Or. at 577, 848 P.2d 76. A defendant's "right to trial by jury on all elements of the offenses of which [a defendant] has been convicted" is not violated in that circumstance because the state has proved to "a jury all elements of the offenses of which he is accused" in the same case . Id. at 578-79, 848 P.2d 76. On the other hand, Davis focuses on the application of issue preclusion in "two distinct criminal cases" and "two separate criminal prosecutions" on different charges. 265 Or. App. at 188, 335 P.3d 1266. In Davis , we concluded that an instruction to the jury that certain facts have been established beyond a reasonable doubt based on convictions on different charges in a different case prevents a jury from finding all of the elements of a charged offense and, thus, violates the defendant's right to trial by jury. Id. at 193-94, 335 P.3d 1266.
Although the parties at trial framed their dispute in terms of "issue preclusion," we conclude that the issue in this case properly concerns the scope of our remand order in Galloway III . See State v. Bowen , 355 Or. 469, 474-75, 326 P.3d 1162 (2014) (when the defendant does not dispute the terms of our remand, our remand instructions become the "law of the case"). We are not persuaded by defendant's argument that Davis controls the outcome of this case. The state did not first charge defendant with arson and recklessly endangering another person in one "distinct criminal case," and *358 then, in a "separate criminal prosecution," charge defendant for attempted aggravated murder, attempted murder, and burglary. Davis , 265 Or. App. at 188, 335 P.3d 1266. Therefore, we consider the question whether, in the absence of an express order from this court limiting the retrial to the existence of the remaining elements for attempted aggravated murder, attempted murder, and burglary, the trial court erred in ordering a limited retrial.
Here, as noted, our disposition in Galloway III granted post-conviction relief with respect to defendant's convictions for attempted aggravated murder, attempted murder, and burglary in the first degree, and denied relief with respect to defendant's convictions for arson and recklessly endangering another person because those charges did not require the state to prove that defendant intended to kill, or cause injury to, the Brown family when he set the fire in their home. Galloway III , 247 Or. App. at 186, 268 P.3d 736. Our remand order neither expressly required the trial court to retry defendant on every element of the attempted aggravated murder, attempted murder, or burglary charges, nor expressly limited the trial court to conducting a trial on whether defendant set the fire in Brown's home with the intent to cause the death of another person. Thus, the holding of Boots II applies in this case because our opinion and remand order in Galloway III can be read to permit a limited retrial on that issue.
Defendant argues that Boots II does not apply in this case because arson and recklessly endangering are not lesser-included offenses of attempted aggravated murder, attempted murder, or burglary. As explained above, in Wilson III , 216 Or. App. at 234-37, 173 P.3d 150, the kidnapping and assault charges were not lesser-included offenses of attempted aggravated murder or aggravated murder, and we applied the Supreme Court's holding in Boots II to affirm the trial court's decision to order a limited retrial on the remaining elements of the aggravated murder charges because the kidnapping and assault convictions served as the basis to prove certain elements of the aggravated murder charges. Therefore, if the affirmed arson and recklessly endangering convictions serve as the basis to prove certain elements of the attempted aggravated murder, attempted murder, or *359 burglary charges, then the trial *441 court may limit the jury's consideration on retrial to the remaining elements necessary to establish the attempted aggravated murder, attempted murder, and burglary charges. Wilson III , 216 Or. App. at 234, 173 P.3d 150.
D. Defendant's arson and recklessly endangering convictions serve as the basis to prove certain elements of the attempted aggravated murder, attempted murder, and burglary charges.
Defendant's convictions for arson and recklessly endangering another person both involved the same conduct-setting a fire in a dwelling occupied by the Browns. As relevant here, a person commits the crime of first-degree arson if, "[b]y starting a fire or causing an explosion, th[at] person intentionally damages" the "protected property of another," ORS 164.325(1)(a)(A). " 'Protected property' " is defined as "any structure, place or thing customarily occupied by people." ORS 164.305(1). For the first-degree arson charge, Count 15 of the indictment alleged that defendant "did unlawfully and intentionally damage protected property to-wit: a dwelling house[,] * * * the property of Ron Brown[,] * * * by starting a fire" and that "the commission of the above-described offense represented a threat of serious physical injury and a threat to human life."[4] Likewise, for the recklessly endangering another person charges, Counts 23 through 26 of the indictment alleged that defendant "did unlawfully and recklessly create a substantial risk of serious physical injury to [the Browns] by setting a fire in [a] house occupied by [the Browns]." That conduct-setting a fire in a dwelling occupied by the Browns-could have been prompted by defendant's intent to cause the death of the Browns or his intent to damage their property, or it could describe a reckless act by defendant that created a substantial risk of serious physical injury. See *360 State v. Moses , 165 Or. App. 317, 320-23, 997 P.2d 251, rev. den. , 331 Or. 334, 23 P.3d 986 (2000) (concluding that recklessly endangering another person was a lesser included offense of attempted aggravated murder when the indictment alleged that the defendant intentionally attempted to cause the victim's death by firing shots into a van loaded with occupants, because that "alleged conduct could have been prompted by an intent to cause the death of the driver, or it could describe a reckless act by defendant that created a substantial risk of physical injury to the driver but did not injure him").
Our review of the allegations in the indictment reveals that the affirmed arson and reckless endangerment convictions have the same actus reus element as the attempted aggravated murder and attempted murder charges. With respect to the attempted aggravated murder and attempted murder charges, the state's theory of attempted aggravated murder and attempted murder was that defendant attempted to kill the Browns by means of arson. Counts 1 through 14 of the indictment alleged, in pertinent part, that defendant "did unlawfully and intentionally attempt to cause the death of another human being * * * by setting a fire in a dwelling occupied by [the Browns]." "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). According to the indictment, the substantial step that defendant took in attempting the aggravated murder and murder of the Browns was intentionally setting a fire in their home. Thus, the conduct alleged in the charging instrument for attempted aggravated murder and attempted murder-setting a fire in a dwelling occupied by the Browns-expressly included the same conduct as the convictions for arson and recklessly endangering another person. As such, the arson and recklessly endangering convictions served as the basis to prove the actus reus element of the attempted aggravated murder and attempted murder charges.
*442 Likewise, as alleged, defendant's convictions for arson and recklessly endangering served as a basis to prove certain elements of the charged counts of burglary. For count 21, the indictment alleged, in pertinent part, that defendant *361 "did unlawfully and knowingly enter and remain in a[n occupied] dwelling * * * with the intent to commit the crimes of murder, arson and criminal mischief therein, and * * * attempt[ed] to cause physical injury to Ron Brown." Count 22 of the indictment alleged that defendant "did unlawfully and knowingly enter and remain in a building * * * with the intent to commit the crimes of murder, arson and criminal mischief therein, and while in said building, defendant did attempt to cause physical injury to [the Browns]." Because the burglary charges contained an allegation that defendant entered and remained in Brown's home intending to commit murder and arson, and that defendant intentionally took a substantial step towards causing physical injury to the Browns, the conduct underlying the arson and recklessly endangering convictions-setting a fire in a dwelling occupied by the Browns-also served as a basis to prove elements of the burglary charges. See State v. Walters , 311 Or. 80, 86 n. 9, 804 P.2d 1164, cert. den. , 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991) ("[T]he same conduct may constitute a substantial step toward the commission of more than one charged crime, as long as that conduct strongly corroborates the actor's criminal purpose underlying each charged crime.").
At defendant's retrial, all of the charges were based on the same conduct, viz. , defendant setting a fire in a dwelling occupied by the Browns, and, because the affirmed arson and recklessly endangering convictions served as a basis to prove certain elements of the attempted aggravated murder, attempted murder, and burglary charges, we conclude that the trial court did not err when it ordered a retrial limited to the remaining elements necessary to establish those charges. Furthermore, we conclude that the trial court did not err by instructing the jury that defendant had committed arson and recklessly endangering another as a matter of law.
III. CONCLUSION
To summarize, in Galloway III , we concluded that
"trial counsel's performance was constitutionally inadequate * * * with respect to her failure to investigate, and put on evidence regarding, the lethal potential of the fire that [defendant] set at the Browns' home. That failure *362 obviously had no tendency to affect the jury's verdicts regarding crimes that did not have, as an element, an intention to kill or to cause injury to a person or persons. Thus, the inadequacy had a tendency to affect the verdicts in the attempted aggravated murder and attempted murder charges. It also had a tendency to affect the first-degree burglary verdict[.]"
Galloway III , 247 Or. App. at 186, 268 P.3d 736. Trial counsel's failure to investigate the lethal potential of the fire that defendant set at Brown's home did not affect the validity of defendant's arson and recklessly endangering convictions and, because defendant was already afforded a jury trial on those charges in this case, he is not constitutionally entitled to attack those jury verdicts.[5]
At defendant's retrial, all of the charges were based on the same conduct that was conclusively established by the first jury's guilty verdicts for arson and reckless endangerment, viz. , defendant setting a fire in a dwelling occupied by the Browns. Our remand order neither expressly required the trial court to retry defendant on every element of the attempted aggravated murder, attempted murder, or burglary charges, nor expressly limited the trial court to a trial on whether defendant set the fire in Brown's home with the intent to cause the death of another person. Accordingly, the trial court instructed the jury to consider whether, at the time defendant committed arson and *443 recklessly endangering another by setting a fire in a house occupied by the Browns, "defendant had the intent to cause the death of another person." See State v. Green , 271 Or. 153, 175-76, 531 P.2d 245 (1975) (limiting the retrial to the issue of the defendant's intent when he killed two girls because there was "overwhelming evidence" that the defendant had committed "either murder or manslaughter"). That instruction properly focused the jury on the remaining elements of the *363 charges of attempted aggravated murder, attempted murder, and burglary. See Boots II , 315 Or. at 577, 848 P.2d 76 (concluding that the trial court did not err in ordering a "retrial limited to those issues that caused the appellate court to reverse defendant's conviction on the greater offense"); Wilson III , 216 Or. App. at 234, 173 P.3d 150 (the trial court did not err by instructing the jury that the defendant had committed kidnapping and assault because those affirmed convictions served as the basis to prove certain elements of the reversed aggravated murder charges). Thus, as was the case in Boots II and Wilson III , defendant's right "not to be put in jeopardy twice for the same offense," his "right to trial by jury on all elements of the offenses of which he has been convicted," and his "right to be presumed innocent of the crime with which he is charged" have not been violated. Boots II , 315 Or. at 577-79, 848 P.2d 76.[6]
For the foregoing reasons, we conclude that the trial court did not err in ordering a retrial limited to the remaining elements of the attempted aggravated murder, attempted murder, and burglary charges, and instructing the jury that defendant had committed arson and recklessly endangering another as a matter of law.
Affirmed.

The trial court clarified that the parties could present evidence relevant to defendant's intent when he started the fire in Brown's home, but that defendant could not present evidence that he had not started the fire because that issue was conclusively determined by the jury in defendant's first trial.

Defendant does not separately contend that the substance of the trial court's jury instruction was erroneous if the trial court correctly concluded that our opinion and remand order in Galloway III permitted it to order a limited retrial on the remaining elements of the attempted aggravated murder, attempted murder, and burglary charges.

The defendant also argued that Boots II "should be overruled in light of Blakely v. Washington , 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)." Wilson III , 216 Or. App. at 234, 173 P.3d 150. Defendant made that same argument to us in this case. We adhere to our conclusion in Wilson III that "nothing in those cases so explicitly and directly repudiates Boots as to compel this court, an intermediate appellate court, to deem an opinion of the Oregon Supreme Court to have been 'overruled' by subsequent United States Supreme Court authority." Id.

With respect to the other first-degree arson charges, Counts 16 through 20 of the indictment alleged that defendant "did unlawfully and intentionally damage certain property to wit: clothing and personal property by starting a fire thereby said defendant did recklessly place [the Browns] in danger of physical injury" and that "the commission of the above-described offense represented a threat of serious physical injury and a threat to human life." See ORS 164.325 (1)(a)(B).

At his retrial, defendant wanted to present evidence that the fire was caused by spontaneous combustion or suggest that one of the investigating police officers was the arsonist. That evidence would have contradicted the first jury's guilty verdicts for arson and reckless endangerment that necessarily established that defendant had, in fact, started the fire in Brown's home. Cf. Boots II , 315 Or. at 580-81, 848 P.2d 76 (error to instruct jury that the defendant had committed first-degree robbery where "the verdict in the first trial did not necessarily establish that defendant committed robbery").

Defendant's argument focuses primarily on our decision in Davis , which was grounded in the defendant's right to a trial by jury under Article I, section 11, of the Oregon Constitution. 265 Or. App. at 194, 335 P.3d 1266. Defendant also contends, without analysis or elaboration, that the trial court's ruling and jury instruction violated several other constitutional rights afforded to him by the state and federal constitutions. Defendant's summary reference to those provisions "is insufficient to present any specific [state or] federal constitutional argument to this court and, accordingly, we decline to address th[ose] issue[s]." State v. McNeely , 330 Or. 457, 468, 8 P.3d 212 (2000).